# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

       Plaintiff,

vs.                                            No. CR  21-0857 JB

EUSEBIO IKE DEVARGAS,

       Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on: (i) the United States' Motion in Limine to Exclude Defendant's Self-Serving Statements as Inadmissible Hearsay, filed October 20, 2021 (Doc. 45)("First MIL"); (ii) the United States' Motion in Limine to Exclude Evidence of Possible Penalties, filed October 20, 2021 (Doc. 46)("Second MIL"); (iii) the United States' Motion in Limine to Prohibit Unfounded Allegations of Government Misconduct or Irrelevant Challenges to the Quality of the Government's Investigation, filed October 22, 2021 (Doc. 48)("Third MIL"); (iv) the United States' Motion in Limine to Prohibit Discussion of Defense Exhibits Not Previously Provided to the United States, filed October 22, 2021 (Doc. 49)("Fourth MIL"); (v) the United States' Motion in Limine to Prohibit Evidence of Defendant's Personal Beliefs About the Second Amendment, filed November 5, 2021 (Doc. 62)("Fifth MIL"); (vi) the United States' Motion in Limine Regarding Admission of Defendant's Prior Conviction Documents, filed November 5, 2021 (Doc. 63)("Sixth MIL"); (vii) the Defendant's Motion to Dismiss, filed November 9, 2021 (Doc. 71)("MTD"); (viii) the Defendant's First Motion to Suppress Evidence, filed November 9, 2021 (Doc. 72)("First MTS"); (ix) the Defendant's Second Motion to Suppress Evidence, filed November 10, 2021 (Doc. 74)("Second MTS"); and (x) the Defendant's Third

Motion to Suppress, filed November 9, 2021 (Doc. 73)("Third MTS").[1]   The Court held an

evidentiary hearing on December 28, 2021. See Clerk's Minutes at 1, filed December 28, 2021

(Doc. 117).  The primary issue is whether the Court should dismiss the Superseding Indictment,

filed October 26, 2021 (Doc. 53)("Indictment"), against Defendant Eusebio Ike DeVargas for

being a felon in possession of a firearm, because (i) N.M.S.A. § 31-13-1, which holds that a person

with a felony conviction cannot hold public office, violates the New Mexico Constitution, and,

therefore, DeVargas' civil rights were restored after his 1992 conviction, so it cannot serve as a

predicate offense for 18 U.S.C. § 922(g); and (ii) after DeVargas served his suspended sentence

after his 2018 conviction, his civil rights were automatically restored and therefore, DeVargas'

2018 conviction cannot serve as a predicate offense for 18 U.S.C. § 922(g).  The Court concludes

that the Court should not dismiss the Indictment, because (i) although the Court determines that

the Supreme Court of New Mexico would conclude that N.M.S.A. § 31-13-1 is unconstitutional,

and therefore DeVargas' civil rights were restored following his 1992 conviction, (ii) DeVargas'

---

[1]In this Memorandum Order and Opinion, the Court explains fully its reasoning for denying the Defendant's Motion to Dismiss, filed November 9, 2021 (Doc. 71).  The Court also issues its formal Orders on the  United States' Motion in Limine to Exclude Defendant's Self-Serving Statements as Inadmissible Hearsay, filed October 20, 2021 (Doc. 45)("First MIL"); the United States' Motion in Limine to Exclude Evidence of Possible Penalties, filed October 20, 2021 (Doc. 46)("Second MIL");  the United States' Motion in Limine to Prohibit Unfounded Allegations of Government Misconduct or Irrelevant Challenges to the Quality of the Government's Investigation, filed October 22, 2021 (Doc. 48)("Third MIL"); the United States' Motion in Limine to Prohibit Discussion of Defense Exhibits Not Previously Provided to the United States, filed October 22, 2021 (Doc. 49)("Fourth MIL"); the United States' Motion in Limine to Prohibit Evidence of Defendant's Personal Beliefs About the Second Amendment, filed November 5, 2021 (Doc. 62)("Fifth MIL"); the United States' Motion in Limine Regarding Admission of Defendant's Prior Conviction Documents, filed November 5, 2021 (Doc. 63)("Sixth MIL"; the Defendant's First Motion to Suppress Evidence, filed November 9, 2021 (Doc. 72)("First MTS"), the Defendant's Second Motion to Suppress Evidence, filed November 10, 2021 (Doc. 74)("Second MTS"), and the Defendant's Third Motion to Suppress, filed November 9, 2021 (Doc. 73)("Third MTS").  The Court will issue another Memorandum Opinion at a later date fully explaining its rationale for the First MTS, Second MTS, and Third MTS.

civil rights were not restored following his suspended sentence's completion on his 2018 conviction, and it can, therefore, serve as a predicate offense for 18 U.S.C. § 922(g); and, (ii) for the reasons stated on the record at the December 28, 2021, hearing, the Court will grant in part and deny in part the First MIL, will grant the Second MIL, will grant in part and deny in part the Third MIL, will grant the Fourth MIL, will grant in part and deny in part the Fifth MIL, will grant in part and deny in part the Sixth MIL, and will deny the First MTS, Second MTS, and Third MTS.

## **FACTUAL BACKGROUND**

Rule 12(d) of the Federal Rules of Criminal Procedure requires the Court to state its essential findings on the record when deciding a motion that involves factual issues. See Fed. R. Crim. P. 12(d) ("When factual issues are involved in deciding a motion, the court must state its essential findings on the record."). The findings of fact in this Memorandum Opinion and Order shall serve as the Court's essential findings for rule 12(d) purposes. The Court makes these findings under the authority of rule 104(a) of the Federal Rules of Evidence, which requires a judge to decide preliminary questions relating to the admissibility of evidence, including the legality of a search or seizure, and the voluntariness of an individual's confession or consent to a search. See United States v. Merritt, 695 F.2d 1263, 1269-70 (10th Cir. 1982). In deciding such preliminary questions, the other rules of evidence, except those with respect to privileges, do not bind the Court. See Fed. R. Evid. 104(a) ("The court must decide any preliminary question about whether a witness is qualified, a privilege exists, or evidence is admissible. In so doing, the court is not bound by evidence rules, except those on privilege."). "[H]earsay testimony is admissible at suppression hearings . . . and should be considered by a district court[.]" United States v. Miramonted, 365 F.3d 902, 904 (10th Cir. 2004)(citing United States v. Matlock, 415 U.S. 164,

173 (1974)).[2]   The Court takes its facts from the Criminal Complaint, filed May 17, 2021 (Doc. 1)("Complaint"), the Second MTS, Amended Application for a Warrant by Telephone or Other Reliable Electronic Means, filed November 10, 2021 (Doc. 74-4)("Search Warrant Application"), the Third MTS, and the evidence and arguments made at the December 28, 2021, evidentiary

---

[2]In Crawford v. Washington, 541 U.S. 36 (2004), the Supreme Court of the United States of America held that the introduction of testimonial hearsay statements from witnesses not subjected to cross examination at trial violates a defendant's Sixth Amendment confrontation right. See 541 U.S. at 68-69.  There is no binding precedent from the Supreme Court or the United States Court of Appeals for the Tenth Circuit concerning whether Crawford v. Washington applies to pretrial suppression hearings.  The Tenth Circuit has indicated in unpublished caselaw that Crawford v. Washington does not bar hearsay statements at a suppression hearing.  In United States v. Ramirez, the Tenth Circuit notes:

> It is beyond reasonable debate that Ramirez's counsel were not ineffective in failing to make a Confrontation Clause challenge to the use of the confidential informant.  The Supreme Court has not yet indicated whether the Confrontation Clause applies to hearsay statements made in suppression hearings. See United States v. Garcia, 324 Fed. App'x. 705, 708 (10th Cir. [2009]), cert. denied, [558] U.S. [890] . . . (2009)(collecting cases).  Nonetheless, even if we assume that the Confrontation Clause applies to the hearings at issue here, the admission of the confidential informant's statements was harmless.

388 F. App'x 807, 810 (10th Cir. 2010)(unpublished).  Moreover, based on the same reasoning as the Tenth Circuit in United States v. Ramirez, 388 F. App'x 807 (10th Cir. 2010)(unpublished), the Court has concluded that hearsay statements are admissible in a detention hearing.  See United States v. Hernandez, 778 F. Supp. 2d 1211, 1227 (D.N.M. 2011)(Browning, J.)("Before Crawford v. Washington, courts held that the Confrontation Clause did not attach to detention hearings. Nothing in the Supreme Court's opinion in Crawford v. Washington undermines those holdings. Moreover, what authority exists after Crawford v. Washington rejects the proposition that Crawford v. Washington applies outside of trial.").  Moreover, other Courts of Appeals that have addressed this question have held that hearsay evidence's introduction at pre-trial proceedings does not violate the Confrontation Clause.  See Peterson v. California, 604 F.3d 1166 (9th Cir. 2010)(concluding that the admission of hearsay evidence at a preliminary hearing does not violate the Confrontation Clause, because the right to confrontation is a trial right).  See also United States v. Mitchell-Hunter, 664 F.3d 45, 52 (1st Cir. 2011)(holding that the defendant did not have a confrontation right in a pretrial jurisdictional hearing).  Consequently, the Court concludes that the admission of hearsay testimony at the suppression hearing does not violate DeVargas' confrontation rights.

hearing.  The Court recognizes that, insofar as the Court draws facts from the Complaint, these facts largely reflect the United States' version of events.

       1.       **January 7, 2021, Stop**.

       1.       On January 7, 2021, Rio Rancho Police Department Officer Petross observed a Nissan truck with an expired registration traveling near Rio Rancho, New Mexico.  <u>See</u> Complaint ¶ 5, at 3.

       2.       Petross performed a traffic stop on the Nissan truck, and identified DeVargas as the driver.  <u>See</u> Complaint ¶ 6, at 3.

       3.       Petross noticed an odor of alcohol from the vehicle, and DeVargas told Petross that he had one shot of vodka approximately two hours before the stop.  <u>See</u> Complaint ¶ 6, at 4.

       4.       Before conducting a Standard Field Sobriety Test, Petross asked DeVargas if he had any weapons on him, and DeVargas stated that he had a firearm.  <u>See</u> Complaint ¶ 7, at 4.

       5.       DeVargas showed no signs of impairment during the Sobriety Test, and Petross returned DeVargas' firearm and released him from the scene.  <u>See</u> Complaint ¶ 8, at 4.

       6.       Shortly thereafter, Petross realized that DeVargas had a felony conviction and should not possess a firearm, but officers could not relocate DeVargas.  <u>See</u> Complaint ¶ 8, at 4.

       2.       **April 10, 2021, Stop**.

       7.       On April 10, 2021, Bernalillo County Sheriff's Office Field Services Deputy Alfred Duchaussee observed DeVargas wearing dark clothing riding a red bicycle near the intersection of 2nd St. NW and Candelaria St. NW in Albuquerque, New Mexico.  <u>See</u> Complaint ¶ 9, at 4.

       8.       DeVargas was riding southbound on 2nd St. without a front mounted head light or rear reflector.  <u>See</u> Complaint ¶ 9, at 5.

9.    When Duchaussee approached DeVargas, DeVargas pedaled faster and turned down Veranda St., which is a dead-end road.  See Complaint ¶ 10, at 5.

10.   DeVargas turned around, pedaled past Duchaussee and stated: "I did nothing wrong."  Complaint ¶ 11, at 5.

11.   Duchaussee attempted to apprehend DeVargas, who continued to state, "I did nothing wrong," and resist Duchaussee.  Complaint ¶ 11, at 5-6.

12.   DeVargas informed Duchaussee that he had a weapon, and Duchaussee approached and handcuffed DeVargas.  See Complaint ¶ 11, at 5-6.

13.   DeVargas informed Duchaussee that the weapon was in his front pocket, and Duchaussee recovered a firearm from DeVargas' pocket.  See Complaint ¶ 12, at 6.

**3.    Search Warrant.**

14.   On May 27, 2021, the Honorable Jerry H. Ritter, United States Magistrate Judge for the United States District Court in the District of New Mexico, issued a search warrant for DeVargas' residence.  See Second MTS at 4.

15.   The United States then sought to expand the scope of the search warrant to another building, called Superior Automotive, located on the same property.  See Second MTS at 4.

16.   The Search Warrant Application alleges that DeVargas is a member of the Brew Town Locos[3] gang and seeks to search his residence for evidence of firearms, drug trafficking, and gang activity.  See Second MTS at 4.

---

[3]Brew Town Locos is a gang in Albuquerque, New Mexico.  "Brew Town Locos are considered an 'old school' multi-generational Albuquerque gang, according to the FBI, in which new members are 'born into' the gang or recruited by ranking members."  FBI, ABQ unit target Brew Town Locos, Albuquerque Journal, June 4, 2021, available at: https://www.abqjournal.com/2396973/fbi-abq-unit-target-brew-town-locos.html (last visited January 8, 2022)(no citation for quotation).

17.     The Search Warrant Application notes that the FBI Violent Crime Gang Task Force and Albuquerque Police Department Gang Unit have been investigating the Brew Town gang for approximately two years.  See Search Warrant Application ¶ 6, at 2.

18.     The Search Warrant Application states that DeVargas, among others, is suspected of participating in a conspiracy to distribute controlled substances to further Brew Town's objectives and purposes.  See Search Warrant Application ¶ 7, at 3.

19.     The Search Warrant Application further states that DeVargas, among others, is "currently being sought on U.S. District Court arrest warrants related to this investigation."  Search Warrant Application ¶ 9, at 4.

20.     The Search Warrant Application seeks "to search the premises the[] fugitives are associated with to apprehend and bring them before the court," and lists DeVargas' residence as a premises to search.  Search Warrant Application ¶¶ 9-10, at 4-5.

21.     In identifying the probable cause to search DeVargas' residence, the Search Warrant Application states:

> EUSEBIO DEVARGAS is an associate of the BTL and has at least 12 prior arrests in New Mexico and Colorado.  EUSEBIO DEVARGAS has prior felony convictions for murder and aggravated fleeing a law enforcement officer. EUSEBIO DEVARGAS is currently wanted on a U.S. District Court arrest warrant for being a felon in possession of a firearm . . . and is currently on conditions of release in the related New Mexico State case.

Search Warrant Application ¶ 58, at 22.

22.     As to DeVargas, the Search Warrant Application further states:

> In April 2021, BTL suspected member EUSEBIO DEVARGAS was stopped on a bicycle a little after midnight by a BCSO patrol deputy within the BTL territory.  EUSEBIO DEVARGAS initially tried to evade the deputy but was subsequently contacted a short distance later.  EUSEBIO DEVARGAS told the deputy he had a pistol on his person and he was detained.  Deputies queried EUSEBIO DEVARGAS and learned he had several prior felony convictions, to

> include a homicide conviction.  [Confidential Human Source 4 ("CHS-4")] is a
> close associate of EUSEBIO DEVARGAS and advised EUSEBIO DEVARGAS
> was a BTL member and heroin addict.  CHS-4 said EUSEBIO DEVARGAS served
> as a lookout for several BTL dealers, who paid EUSEBIO DEVARGAS in dope.
> CHS-4 said the night EUSEBIO DEVARGAS he had been working as a lookout
> for the BTL and led the deputy away from a BTL drug house before submitting to
> arrest.

Search Warrant Application ¶ 107, at 34.

23.    Law enforcement officers observed DeVargas working on vehicles in front of his

residence in Albuquerque.  See Search Warrant Application ¶ 138, at 44.

24.    The Search Warrant Application states that DeVargas' residence is associated with

"Superior Automotive," which is an auto repair and auto-related work shop.  Search Warrant

Application ¶ 153, at 51-52.

25.    The Affiant Officer, Leysha López, states, "I am aware that gang members and drug

traffickers often utilize businesses, specifically car repair shops, to further their criminal

activities."  Search Warrant Application ¶ 155, at 52-53.

## PROCEDURAL HISTORY

DeVargas was arrested on June 2, 2021.  See Arrest Warrant Returned Executed, filed June

4, 2021 (Doc. 11).  On October 26, 2021, a federal Grand Jury charged DeVargas with: (i) Count

1, being a felon in possession of a firearm on April 10, 2021, in violation of 18 U.S.C. §§ 922(g)(1)

and 924; and (ii) Count 2, being a felon in possession of a firearm on June 2, 2021, in violation of

18 U.S.C. §§ 922(g)(1) and 924.  See Indictment at 1.  The Indictment lists DeVargas' two previous

felony convictions: (i) second degree murder; and (ii) aggravated fleeing a law enforcement

officer.  See Indictment at 1.  DeVargas filed his MTD the Indictment on November 9, 2021.  See

MTD at 1.

1.      **MTD**.

In his MTD, DeVargas notes that his charge for being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924 is based on two predicate felonies: (i) a 1992 conviction for second-degree murder; and (ii) a 2018 conviction for aggravated fleeing a law enforcement officer.  See MTD at 1-2.  DeVargas contends that the Court should dismiss the Indictment against him for two reasons: (i) DeVargas' 1992 conviction cannot serve as a predicate offense under § 922(g), because his civil rights were restored following that conviction; and (ii) DeVargas' 2018 conviction for aggravated fleeing a law enforcement officer cannot serve as a predicate offense under § 922(g), because he received a fully suspended sentence for that conviction which resulted in a judicial pardon that fully restored his rights upon completion of the suspended sentence.  See MTD at 2-3.  First, DeVargas contends that, pursuant to United States v. Maines, 20 F.3d 1102 (10th Cir. 1994), the United States cannot rely on DeVargas' 1992 second-degree murder conviction, because his right to vote, right to hold public office, right to serve on a jury, and right to possess firearms were restored.  See MTD at 3-4.  DeVargas attests that, under New Mexico law, his right to serve on a jury was restored upon his sentence's completion.  See MTD at 4 (citing N.M.S.A. § 38-5-1 ("A person who was convicted of a felony and who meets all other requirements for eligibility may be summoned for jury service if the person has successfully completed all conditions in the sentence imposed for the felony, including conditions for probation or parole.")).  DeVargas contends that he completed all conditions of his second-degree murder sentence, including parole, in June, 2000, at which time his right to serve on a jury was automatically restored.  See MTD at 4-5.  DeVargas attests that his right to vote was also restored upon his sentence's completion in June, 2000.  See MTD at 5 (citing N.M.S.A. § 31-13-1(C) (stating that, upon completion of a felony sentence, "the corrections department shall inform the

person that the person is entitled to register to vote" and that "the person's voting rights are restored."). DeVargas registered to vote and voted in 2008.  See MTD at 6.  DeVargas also argues that his right to hold public office was restored when his right to vote was restored.  See MTD at 6.  DeVargas notes that the New Mexico Constitution, Article VII, § 2 states: "Every citizen of the United States who is a legal resident of the state and is a qualified elector therein, shall be qualified to hold any elective public office except as otherwise provided in this constitution," and Article VII, § 1 describes the qualifications for serving as an elector.  See MTD at 6 (citing N.M. Const. Art. VII, §§ 1 and 2).  DeVargas contends that the New Mexico Constitution does not restrict felons from serving in public office.  See MTD at 6.  DeVargas acknowledges, however, a separate New Mexico law which states:

> A person who has been convicted of a felony shall not be permitted to hold an office of public trust for the state, a county, a municipality or a district, unless the person has presented the governor with a certificate verifying the completion of the sentence and was granted a pardon or certificate by the governor restoring the person's full rights of citizenship.

N.M.S.A. § 31-13-1(E).  See MTD at 6.  Still, another New Mexico statute states "'[t]hat no person convicted of a felonious or infamous crime unless such person has been pardoned or restored to political rights, shall be qualified to be elected or appointed to any public office in this state." MTD at 7 (quoting N.M.S.A. § 10-1-2 (alteration in MTD)).  While DeVargas acknowledges that the Supreme Court of New Mexico has not ruled on this question, DeVargas contends that N.M.S.A. § 31-13-1(E) and § 10-1-2 are unconstitutional under the New Mexico Constitution.  See MTD at 7.  Finally, DeVargas contends that, under State law, his right to possess a firearm was restored in 2010.  See MTD at 9.  While New Mexico law prohibits a felon from possessing a firearm, DeVargas notes that New Mexico law defines a felon as:

a person convicted of a felony offense by a court of the United States or of any state or political subdivision thereof and:

    (a)    less than ten years have passed since the person completed serving a sentence or period of probation for the felony conviction, whichever is later;

    (b)    the person has not been pardoned for the felony conviction by the proper authority; *and*

    (c)    the person has not received a deferred sentence

MTD at 9 (citing N.M.S.A. § 30-7-16(A)(1) and quoting N.M.S.A. § 30-7-16(D)(3))(emphasis added in MTD only). DeVargas contends that "[t]en years from the date DeVargas completed his sentence and parole for the 1992 second-degree murder conviction ran at the end of May of 2010" and, at that point, DeVargas was no longer a 'felon' in New Mexico, and consequently his state right to possess a firearm was restored. MTD at 9.

Next, DeVargas argues that he received a form of judicial clemency for his 2018 aggravated fleeing a law enforcement officer conviction, that, therefore, his civil rights were restored, and that the conviction cannot be a predicate offense under § 922(g). See MTD at 10. DeVargas contends that, pursuant to the Supreme Court of New Mexico's decision in United States v. Reese, 2014-NMSC-013, 326 P.3d 454 (2014), a person's civil rights are restored "'upon the satisfactory completion of all conditions for a deferred sentence and the resulting dismissal of all charges.'" See MTD at 10 (quoting United States v. Reese, 2014-NMSC-013, at ¶ 1, 326 P.3d at 454). While the defendant in United States v. Reese had a deferred sentence, DeVargas argues that the same United States v. Reese principles apply to a defendant who has a suspended sentence -- as DeVargas has for his 2018 conviction -- and, therefore, DeVargas' civil rights were restored at his suspended sentence's completion. See MTD at 13. Consequently, DeVargas attests that the Court should dismiss the Indictment against him, because neither his 1992 second-degree murder

conviction nor his 2018 aggravated fleeing conviction can serve as predicate offenses under 18 U.S.C. § 922.  See MTD at 15-16.

> **2.    MTD Response.**

The United States responds.  See United States' Response to Defendant's Motion to Dismiss, filed December 17, 2021 (Doc. 99)("Response").  First, the United States contends that DeVargas' right to hold public office was not restored following either his 1992 conviction or his 2018 conviction.  See Response at 2.  Second, the United States contends that DeVargas' right to possess a firearm was not restored under state law for his 2018 conviction.  See Response at 2. The United States acknowledges that a person is not a "felon" pursuant to 18 U.S.C. § 921(a)(20) if his or her civil rights have been restored, and the essential civil rights that a defendant must demonstrate are restored are the right to vote, to seek and hold public office, to serve on a jury, and to possess firearms.  See Response 2-3 (citing 18 U.S.C. § 921(a)(20), United States v. Maines, 20 F.3d at 1104, and United States v. Flower, 29 F.3d 530, 536 (10th Cir. 1994)).  The United States concedes that DeVargas' right to vote and to serve on a jury were restored for both his 1992 and 2018 convictions, but contends that his right to hold public office was never restored.  See Response at 3.  Further, the United States concedes that DeVargas' right to possess a firearm under New Mexico law was restored ten years after he completed his sentence on the 1992 conviction, but that he lost the right to possess a firearm by virtue of his 2018 conviction, after which the right was never restored.  See Response at 4.  The United States acknowledges DeVargas' argument that N.M.S.A. §§ 10-1-2 and 31-13-1 are unconstitutional under the New Mexico Constitution, but contends that the statutes are, in fact, consistent with the New Mexico Constitution.  See Response at 6.  The United States argues that the Governor must have granted DeVargas a pardon or certificate to restore his right to hold public office.  See Response at 6.

Next, the United States contends that DeVargas' civil rights were not restored after his 2018 aggravated fleeing conviction pursuant to United States v. Reese, because suspended sentences are different than deferred sentences.  See Response at 7 (citing 2014-NMSC-013, at ¶ 24, 326 P.3d at 454, 549).  Specifically, the United States argues that the difference between a suspended sentence like DeVargas has, and the deferred sentence which the defendant in Reese has, is that deferment results in the charges' dismissal at the deferred sentence's completion, while suspension involves a "completed sentence and the opportunity to request a pardon."  Response at 8.  Consequently, the United States concludes that DeVargas has not demonstrated that his civil rights were restored and, therefore, 18 U.S.C. § 922 prohibits him from possessing a firearm.  See Response at 8.

   3.    **MTD Reply.**

DeVargas replies.  See Defendant's Reply in Support of his Motion to Dismiss, filed December 27, 2021 (Doc. 109)("Reply").  At the outset, DeVargas notes that, based on the United States' concessions, the only disputes remaining are: (i) whether DeVargas' right to vote was restored after his 1992 conviction; and (ii) whether DeVargas' civil rights automatically were restored after his 2018 conviction.  See Reply at 1.  DeVargas notes that the United States relies on an unpublished United States Court of Appeals for the Tenth Circuit decision, United States v. Molina, 484 F. App'x 276 (10th Cir. 2012)(unpublished)[4], to contend that the Tenth Circuit has

---

[4]United States v. Molina is an unpublished opinion, but the Court can rely on an unpublished Tenth Circuit opinion to the extent its reasoned analysis is persuasive in the case before it.  See 10th Cir. R. 32.1(A)("Unpublished decisions are not precedential, but may be cited for their persuasive value.").  The Tenth Circuit has stated:

   In this circuit, unpublished orders are not binding precedent, . . . and we have generally determined that citation to unpublished opinions is not favored. However, if an unpublished opinion or order and judgment has persuasive value

relied on N.M.S.A. §§ 10-1-2 and 31-13-1 to conclude that the defendant -- a felon -- could not run for public office under New Mexico law.  See Reply at 2.  DeVargas notes, however, that United States v. Molina is not persuasive, because the New Mexico Constitution has been amended since that decision, and the amendments remove important language that "an elector could not hold public office if they were 'convicted of a felonious or infamous crime . . . unless restored to political rights.'"  Reply at 2 (quoting United States v. Molina, 484 F. App'x at 281).  DeVargas argues that, based on the recent amendments to the New Mexico Constitution, the requirements for being an elector have changed, and "any individual that has completed a felony sentence, including their term of probation or parole, now has their voting rights automatically restored."  Reply at 3.  DeVargas states that, because N.M.S.A. § 31-13-1(E) and § 10-1-2 require a person to receive a pardon or certificate from the Governor to hold elected office, they conflict with the "sole constitutional criteri[on]" of being a qualified elector under the New Mexico Constitution and, thus, the statutes are unconstitutional.  Reply at 3.  DeVargas contends that § 31-13-1(E) and § 10-1-2 are unconstitutional, and therefore, that his voting rights were restored.  See Reply at 3.

Next, DeVargas addresses the United States' argument that DeVargas' civil rights were not restored automatically following his 2018 conviction.  See Reply at 4.  At the outset, DeVargas notes that he agrees with the United States that there are differences between a suspended sentence and a deferred sentence.  See Reply at 4.  DeVargas contends, however, that the same justifications

---

with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision.

United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005).  The Court concludes that United States v. Molina and United States v. Reese, 505 F. App'x 733 (10th Cir. 2013) have persuasive value with respect to a material issue, and will assist the Court in its disposition of this Memorandum Opinion and Order.

which the Supreme Court of New Mexico relies on to determine that person's civil rights are restored automatically after a deferred sentence's completion also hold true for those that complete a suspended sentence.  See Reply at 4.  DeVargas argues that his civil rights were restored following his suspended sentence's completion and, consequently, that his 2018 conviction is not a predicate offense.  See Reply at 4.

4.      **The December 28, 2021, Hearing.**

The Court held a hearing on December 28, 2021.  See Clerk's Minutes at 1.  At the hearing, the Court heard arguments on: (i) the First MIL; (ii) the Second MIL; (iii) the Third MIL; (iv) the Fourth MIL; (v) the Fifth MIL; (vi) the Sixth MIL; (vii) the MTD; (viii) the First MTS; (ix) the Second MTS; and (x) the Third MTS.  See Draft Transcript of Hearing at 2:20-22 (taken December 28, 2021)(Court)("Tr.").[5]  For this Memorandum Opinion and Order's disposition, the Court offers discussion only of the parties' arguments on the MTD.

The Court allowed the parties to present arguments on the MTD.  See Tr. at 95:11-13 (Court).  First, DeVargas acknowledged that, because the United States concedes that DeVargas' rights to vote, serve on a jury, and possess a firearm were restored after his 1992 conviction, the remaining issues include: (i) whether DeVargas' right to hold public office was restored; and (ii) whether DeVargas' rights were automatically restored after he completed his suspended sentence after his 2018 conviction.  See Tr. at 96:6-13 (Hart).  On the question whether DeVargas' voting rights were restored after his 1992 conviction, DeVargas began by noting that this issue is one of first impression.  See Tr. 97:5-7 (Hart).  DeVargas contends that, after its recent amendments, the

_____

[5]The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

New Mexico Constitution "currently reads today . . . that every citizen of the United States who is a legal resident of the state and is a qualified elector therein shall be qualified to hold any elective public office except as otherwise provided in this constitution." Tr. at 97:14-20 (Hart). DeVargas then explains that the New Mexico Constitution, Article VII, defines a qualified elector as anyone who has the right to vote in New Mexico, and holds that the New Mexico Legislature "may prescribe by statute, by the reason of criminal conviction for a felony[,] certain restrictions on the right to vote in New Mexico." Tr. at 98:9-12 (Hart). DeVargas argued that statutes that require a felon to receive a pardon or certificate from the Governor -- and that were enacted before the New Mexico Constitution's amendment -- now conflict with the New Mexico Constitution and are, therefore, unconstitutional. See Tr. at 99:1-7 (Hart).

Next, on the issue whether DeVargas' civil rights were restored automatically when he completed his suspended sentence on the 2018 conviction, DeVargas contended that his civil rights were restored automatically, because a suspended sentence is an act of judicial clemency. See Tr. at 101:14-19 (Hart). DeVargas contends that the Court should analyze whether a suspended sentence results in automatic restoration of civil rights in the same way that the Supreme Court of New Mexico concluded that a deferred sentence results in an automatic restoration of civil rights. See Tr. at 102:17-25 (Hart). Moreover, DeVargas noted that the Supreme Court of New Mexico considered whether a person with a deferred sentence could receive clemency and concluded that a person with a deferred sentence could not receive clemency, because the clemency guidelines instruct that a person with a deferred sentence's rights have already been restored. See Tr. at 103:21-104:17 (Hart). DeVargas concluded, therefore, that his rights were restored automatically after he completed the suspended sentence in his 2018 conviction. See Tr. at 108:17-21 (Hart).

Next, the United States argued that DeVargas did not have his right to hold public office restored after either the 1992 conviction or the 2018 conviction and that he did not have his right to possess a firearm restored after his 2018 conviction.  See Tr. 110:7-16 (Trembley).  First, the United States addressed DeVargas' argument that N.M.S.A. §§ 10-1-2 and 31-13-1(E) are unconstitutional under the New Mexico Constitution.  See Tr. at 110:17-19 (Trembley).  The United States noted that the New Mexico Constitution places limits on what rights cannot be restricted, but that §§ 10-1-2 and 31-13-1(E) provide definitions for phrases in the New Mexico Constitution.  See Tr. 111:3-12 (Trembley).  The United States specifically acknowledged that the New Mexico Constitution section that describes a qualified elector as a person having the right to vote in New Mexico explicitly allows the New Mexico Legislature to restrict a person's right to vote based on felony convictions.  See Tr. at 112:8-17 (Trembley).  Moreover, the United States contended that the New Mexico Legislature is permitted to restrict a person's right to hold public office pursuant to the New Mexico Constitution, and the fact that the New Mexico Constitution states that the New Mexico Legislature cannot restrict a person's right to vote or hold public office based on race, gender, and ability to read or write English supports this conclusion.  See Tr. at 112:20-25 (Trembley).  The United States concluded that the New Mexico Legislature can restrict a person's right to vote and hold public office as well as provide mechanisms for a person to restore those rights after a conviction.  See Tr. at 112:2-7 (Trembley).  The United States also contended that, because there is a presumption of legality in enacted laws, the defendant must demonstrate beyond a reasonable doubt that the New Mexico Legislature went outside the bounds of the New Mexico Constitution in enacting a law for the Court to find it unconstitutional.  See Tr. at 113:1-3 (Trembley).

Next, the United States addressed DeVargas' argument that his rights were restored automatically following his 2018 conviction.  See Tr. at 113:7-11 (Trembley).  The United States contended that, in United States v. Reese, the Supreme Court of New Mexico concluded that the defendant's rights were restored automatically, because a deferred sentence results in an automatic dismissal of a conviction, which is not the case with a suspended sentence.  See Tr. at 113:16-20 (Trembley).  The United States argued that both deferred sentences and suspended sentences are convictions, but that they are not both convictions at the time the defendant requests restoration of his rights.  See Tr. at 114:3-5 (Trembley).  The United States contended: "The restoration of rights on a deferred sentence is automatic because at the completion of the sent[ence] you are not convicted," while at the end of a suspended sentence, a person is still subject to the criminal consequences of having a felony conviction.  Tr. at 114:5-7 (Trembley).  Further, the United States attested that a suspended sentence involves "a sentence imposed," and that N.M.S.A. § 31-13-1 requires that a person presents a certificate verifying that the person has completed his or her sentence, and was granted a pardon or certificate from the Governor that restored his or her full citizenship rights.  Tr. at 115:1-18 (Trembley).

The United States next contended that, even if the Court concludes that DeVargas' rights to vote, serve on a jury, and hold public office were restored following his 2018 conviction, DeVargas has not demonstrated that his right to possess a firearm was restored.  See Tr. at 116:1-4 (Trembley).  The United States attested that New Mexico State law requires a defendant to prove that the defendant received a deferred sentence, received a pardon, or the Governor granted the defendant a pardon.  See Tr. at 116:4-8 (Trembley).  The United States argued that, because DeVargas has not met any of these statutory requirements, his right to possess a firearm has not been restored.  See Tr. at 116:8-10 (Trembley).

- 18 -

Finally, DeVargas responded to the United States' arguments.  See Tr. at 116:18-20 (Hart).

DeVargas characterized the United States' argument as contending that New Mexico Constitution,

Article VII, § 1, is silent on a person's qualifications to hold public office.  See Tr. at 116:21-

117:10 (Hart).  DeVargas contended that, under the New Mexico Constitution, once a person is a

qualified elector, they are eligible to hold public office.  See Tr. at 117:7-10 (Hart).  DeVargas

argued that the New Mexico Constitution is affirmative about this right and that, therefore, the

New Mexico Legislature cannot enact laws that restrict a qualified elector's eligibility to hold

public office.  See Tr. at 117:13-15 (Hart).  The Court then suggested that it is the New Mexico

Legislature that defines who is a qualified elector and, by that logic, that the New Mexico

Legislature has the power to restrict who is eligible to hold public office.  See Tr. at 118:9-12

(Court).  DeVargas responded by contending that the New Mexico Constitution, Article VII, § 2

defines an elector, which is any New Mexico citizen, and explicitly says that the New Mexico

Legislature may put conditions on a person being an elector if they have a felony conviction.  See

Tr. at 118:17-25 (Hart).  According to DeVargas, the New Mexico Legislature has such a

restriction on people who are currently serving sentences for felony convictions, but that a person's

right to vote is restored upon completion of their sentence.  See Tr. at 118:8-10 (Hart).  DeVargas

argued, therefore, that N.M.S.A. § 31-13-1(E) unconstitutionally restricts a person's right to hold

public office, because § 31-13-1(E) requires both that a person complete his or her sentence, and

that the person receive a pardon or certificate from the Governor, and this statute goes further than

what the New Mexico Constitution allows.  See Tr. at 118:15-23 (Hart).  DeVargas contended that,

here, convicted felons who have their voting rights restored are constitutionally eligible to hold

office and, therefore, it is unconstitutional for the New Mexico Legislature to add a requirement

that felons must have their voting rights restored, and also receive a pardon or certificate from the

Governor, because it is in direct conflict with the New Mexico Constitution.  See Tr. at 120:5-14 (Hart).  Moreover, DeVargas noted that the Tenth Circuit certified the question of N.M.S.A. § 31-13-1(E)'s constitutionality to the Supreme Court of New Mexico in United States v. Reese, but the Supreme Court of New Mexico declined to consider the statute's constitutionality and instead decided the case on separate statutory grounds.  See Tr. at 122:11-16 (Hart).  Consequently, DeVargas noted that the question whether DeVargas' right to hold public office was restored following his 1992 conviction is an open question of law, but then argued that United States v. Reese squarely answers the question whether DeVargas' rights have been restored following his suspended sentence in the 2018 conviction.  See Tr. at 124:10-22 (Hart).  With respect to DeVargas' 2018 conviction, DeVargas contended that United States v. Reese says that a person's right to vote, serve on a jury, hold public office, and possess a firearm are restored following a deferred sentence, and argued that the United States is wrong that there is a relevant difference between a deferred sentence and a suspended sentence.  See Tr. at 125:1-13 (Hart).  DeVargas argued that the only difference between a deferred sentence and a suspended sentence is that, with a deferred sentence, if a person violates his or her conditions, a court can impose any sentence within the statutory requirements, and with a suspended sentence, if a person violates his or her conditions, a court will impose a sentence that has already been pronounced.  See Tr. at 126:7-18 (Hart).  The Court then asked DeVargas how the 2010 amendment to the New Mexico Constitution, which removed language stating that a felon could not hold public office, impacts who is "an elector" and how it impacted N.M.S.A. § 31-13-1(E).  Tr. at 129:16-22 (Court).  DeVargas responded that the New Mexico Constitution, Article VII, § 1, requires only that a person be a qualified elector to hold public office, and § 31-13-1(E) places an additional requirement that a person be a qualified elector, and receive a pardon or certificate from the

Governor.  See Tr. at 130:1-15 (Hart).  The Court then noted that it was inclined to deny the Motion.  See Tr. at 130:20-131:10 (Court).

## LAW REGARDING MOTIONS TO DISMISS IN CRIMINAL CASES

The Federal Rules of Criminal Procedure contain no analog for summary judgment under rule 56 of the Federal Rules of Civil Procedure.  See United States v. China Star, Inc., 375 F. Supp. 2d 1291, 1293 (D.N.M. 2005)(Browning, J.)("Under Tenth Circuit law, the Court is not free to determine, like on a motion for summary judgment under the Federal Rules of Civil Procedure, whether a genuine issue of material fact exists.").  "Generally, the strength or weakness of the government's case, or the sufficiency of the government's evidence to support a charge, may not be challenged by a pretrial motion."  United States v. Hall, 20 F.3d 1084, 1087 (10th Cir. 1994). When testing an indictment's sufficiency before trial, an indictment's allegations are taken as true, and courts should not consider evidence outside of the indictment.  See United States v. Hall, 20 F.3d at 1087.   See also United States v. Tafoya, 376 F. Supp. 2d 1257, 1260 (D.N.M. 2005)(Browning, J.).  Accordingly an indictment is legally sufficient so long as it:

> (1) contains the essential elements of the offense intended to be charged,
> (2) sufficiently apprises the accused of what he must be prepared to defend against,
> and (3) enables the accused to plead an acquittal or conviction under the indictment
> as a bar to any subsequent prosecution for the same offense.

United States v. Hall, 20 F.3d at 1087.  The Tenth Circuit has, however, carved out an exception to that general rule for cases "where the underlying facts [are] essentially undisputed and the government fail[s] to object to the district court's resort to evidence beyond the four corners of the indictment."  United States v. Hall, 20 F.3d at 1087.  "Under this scenario, a pretrial dismissal is essentially a determination that, *as a matter of law,* the government is incapable of proving its case beyond a reasonable doubt."  United States v. Hall, 20 F.3d at 1088 (emphasis in original).

The Federal Rules of Criminal Procedure permit defendants, however, to assert defects other than evidentiary insufficiency before trial, because rule 12(b) allows parties to "raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." Fed. R. Crim. P. 12(b)(1). See Fed. R. Crim. P. 12(b)(1) Advisory Committee Note to 2014 Amendments ("The more modern phrase 'trial on the merits' is substituted for the more archaic phrase 'trial of the general issue.' No change of meaning is intended." (no citation for quotation)). That "Rule 47 applies to a pretrial motion," Fed R. Crim. P. 12(b)(1), means that the Court may consider evidence outside of the indictment, see Fed. R. Crim. P. 47(d) ("The moving party must serve any supporting affidavit with the motion. A responding party must serve any opposing affidavit at least one day before the hearing, unless the court permits later service."). On the other hand, rule 47(d) does not permit courts to conduct a "trial on the merits," Fed. R. Crim. P. 12(b)(1), via motion practice, because

> [t]he last sentence providing that a motion may be supported by affidavit is not intended to permit 'speaking motions' (e.g. motion to dismiss an indictment for insufficiency supported by affidavits), but to authorize the use of affidavits when affidavits are appropriate to establish a fact (e.g. authority to take a deposition or former jeopardy).

Fed R. Crim. P. 47 Advisory Committee's Note to 1944 Adoption.

A court can determine a pretrial motion without a trial on the merits when a motion goes to "what evidence might be admitted at trial . . . or the conduct of and preparation for trial." United States v. Pope, 613 F.3d 1255, 1260 (10th Cir. 2010)(Gorsuch, J.). Pretrial motions that "seek and result in dismissal of the case altogether but that can be decided, at least in the circumstances of the case at hand, without deciding any disputed questions of fact about the circumstances of the alleged crime" -- i.e., motions that "involve only the taking of evidence that is 'entirely segregable from the evidence to be presented at trial'" -- also qualify under rule 12(b)(1). United States v.

Pope, 613 F.3d at 1260 (quoting United States v. Barletta, 644 F.2d 50, 58 (1st Cir. 1981)).  See United States v. Olivas-Perea, No. CR 16-4518, 2017 WL 5001985 (D.N.M. October 31, 2017)(Browning, J.)("To decide the MTD, the Court needs to determine only when, not whether, Olivas-Perea was found in the United States, so the Court faces a factual dispute that is peculiar to the MTD, and does not go to Olivas-Perea's guilt or innocence.").  Similarly, courts "may entertain motions that require it to answer only pure questions of law."  United States v. Pope, 613 F.3d at 1260.

The "most prominent" reason for that rule is "respect for the role of the jury."  United States v. Pope, 613 F.3d at 1259.[6]  The jury is charged with determining a defendant's guilt or innocence, so fact-finding "based on evidence that goes to this question can risk trespassing on territory reserved to the jury."  United States v. Pope, 613 F.3d at 1259.  Criminal defendants are entitled to "'a jury determination that [they are] guilty of every element of the crime with which [they are] charged, beyond a reasonable doubt.'"  Apprendi v. New Jersey, 530 U.S. 466, 477 (2000)(quoting United States v. Gaudin, 515 U.S. 506, 510 (1995)).  That entitlement extends to so-called "sentencing factors," i.e., facts, "[o]ther than the fact of a prior conviction," that increase "the penalty for a crime beyond the prescribed statutory maximum."  Apprendi v. New Jersey, 530 U.S. at 490.

---

[6]Other reasons for the rule include: (i) that evidence adduced at trial can provide a more certain framework for a court's analysis; (ii) that holding a separate mini-trial on a defense "only to repeat the exercise with largely the same evidence a short time later at the trial itself" disserves judicial economy; and (iii) that permitting pre-trial motions on matters to be presented at trial could "facilitate an end-run around the limited discovery rules governing criminal proceedings."  United States v. Pope, 613 F.3d at 1259.

## LAW REGARDING 18 U.S.C. § 922(g)(1)

The effective date of 18 U.S.C. § 922(g)(1) is December 16, 1968. 18 U.S.C.A. § 922.

Section 922(g)(1) provides that:

> (g)    It shall be unlawful for any person—
>
> (1)    who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year . . .
>
> to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

18 U.S.C. § 922(g)(1). "The elements of the crime of possession of a firearm by a convicted felon as described in 18 U.S.C. § 922(g)(1) are as follows: [(i)] The defendant was convicted of a felony; [(ii)] Thereafter the defendant knowingly possessed a firearm; and [(iii)] The defendant's possession of the firearm was in or affecting commerce." United States v. Shunk, 881 F.2d 917, 921 (10th Cir. 1989). To be convicted of violating § 922(g)(1), a defendant need not have known that it was illegal for a felon to possess a firearm; "the only knowledge required for a § 922(g)[1] conviction is knowledge that the instrument possessed [was] a firearm." United States v. Capps, 77 F.3d 350, 352 (10th Cir.1996)(internal quotations and citations omitted). 18 U.S.C. § 922(g)(1) is a statute of general applicability. See United States v. Gallaher, 275 F.3d 784, 788 (9th Cir.2001)(citing United States v. Young, 936 F.2d 1050, 1055 (9th Cir.1991)).

In United States v. Rehaif, 139 S.Ct. 2191 (2019), the Supreme Court for the United States of America concluded that, for prosecutions under 18 U.S.C. §§ 922(g) and 924(a)(2), "[t]he Government must prove that the defendant knew he possessed a firearm and that he knew he belonged to the relevant category of persons barred from possessing a firearm." In United States v. Rehaif, 139 S.Ct. at 2200. In United States v. Benton, 988 F.3d 1231 (2021), the United States

Court of Appeals for the Tenth Circuit concluded that, in a prosecution under 18 U.S.C. §§ 922(g) and 924(a)(2), the United States does not have to prove that "a defendant knew his status under § 922(g) prohibited from possessing a firearm." United States v. Benton, 988 F.3d at 1233.  After the Supreme Court's decision in United States v. Rehaif, the Tenth Circuit concludes that "the only knowledge required for conviction is that the defendant knew (1) he possessed a firearm[7] and (2) had the relevant status under § 922(g) at the time of his possession." United States v. Benton, 988 F.3d at 1233 (citing United States v. Rehaif, 139 S.Ct. 2191)(footnote in original).

## LAW REGARDING CERTIFICATION TO THE SUPREME COURT OF NEW MEXICO

N.M.S.A. § 39-7-4, provides:

> The supreme court of this state may answer a question of law certified to it by a court of the United States or by an appellate court of another state, a tribe, Canada, a Canadian province or territory, Mexico or a Mexican state if the answer may be determinative of an issue in pending litigation in the certifying court and there is no controlling appellate decision, constitutional provision or statute of this state.

N.M.S.A. § 39-7-4.  N.M.R.A. 12-607(A) provides:

> (1)   The Supreme Court may answer by formal written opinion questions of law certified to it by a court of the United States, an appellate court of another state, a tribe, Canada, a Canadian province or territory, Mexico, or a Mexican state if the answer may be determinative of an issue in pending litigation in the certifying court and the question is one for which answer is not provided by a controlling
>
> (a)   appellate opinion of the New Mexico Supreme Court or the New Mexico Court of Appeals; or

---

[7]

The knowledge that defendant is in possession of a firearm also requires that the defendant know the object he possesses is a firearm. *See* Rehaif v. United States, ⸻ U.S. ⸻, 139 S. Ct. 2191, 2196, 204 L.Ed.2d 594 (2019). Because that knowledge is not at issue in this case, we do not separately address it.

United States v. Benton, 988 F.3d at 1231 n. 1 (footnote in original).

(b)      constitutional provision or statute of this state.

N.M.R.A. 12-607(A).  See also Walker v. United States, 2007-NMSC-038, ¶ 1, P.3d 882, 884 (2007)(answering questions that the United States Court of Federal Claims certified); Campos v. Murray,  2006-NMSC-020, ¶ 2, 134 P.3d 741, 742 (answering questions that the Honorable Bruce D. Black, United States District Judge for the United States District Court for the District of New Mexico, certified).  Federal courts have the option of determining what a state court would do if confronted with the same issue, see Erie Railroad Co. v. Tompkin, 304 U.S. 64, 78 (1938), or of certifying the question to the state appellate court for review,  see Allstate v. Stone,  1993-NMSC-066, ¶ 1, 863 P.2d 1085, 1086 ("This matter comes before us by way of certification from the United States District Court for the District of New Mexico.").  See also Lehman Bros. v. Schein, 416 U.S. 386, 390-91 (1974)("The decision to certify a question to the state supreme court 'rests in the sound discretion of the federal court.").  Pursuant to N.M.S.A. § 39-7-4, the Supreme Court of New Mexico may answer questions that the federal district court certifies to it if they involve propositions of New Mexico law that may be determinative of the matter before the certifying court and there are no controlling precedents from the New Mexico appellate court. See Swink v. Fingado, 1993-NMSC-013, ¶ 1, 115 N.M. 275, 276, 850 P.2d 978, 979 n. 1 (1993); Schlieter v. Carlos, 1989-NMSC-037, ¶ 5, 108 N.M. 709, 710-11, 775 P.2d 709, 710.

In New Mexico, the Supreme Court may answer questions that the federal district court certifies to it only "if the answer may be determinative of an issue in pending litigation in the certifying court and there is no controlling appellate decision, constitutional provision or statute of this state." N.M.S.A. § 39-7-4.  See NMRA 12-607(A).  In explaining when it will accept certification from a federal court, the Supreme Court of New Mexico has noted that:

> To date, we by and large have limited our acceptance of certifications prior to judgment to those cases in which there is no dispute over the factual predicates to the Court's determination of the questions certified, and our answer either disposes of the entire case or controversy, or disposes of a pivotal issue that defines the future course of the case.

Schlieter v. Carlos, 1989-NMSC-037, ¶ 5, 108 N.M. at 710-11, 775 P.2d at 710-11.  The Honorable Leslie Smith, United States Magistrate Judge for the District of New Mexico, has stated that litigation is not pending under this statute when the district court "has already ruled upon the issue for which [the party] seek[s] certification."  Hartford Ins. Co. of the Midwest v. Cline, 367 F. Supp. 2d 1342, 1344 (D.N.M. 2005)(Smith, M.J.).

In Stoner v. New York Life Ins. Co., 311 U.S. 464 (1940), the Supreme Court of the United States of America explained that, "in cases where jurisdiction rests on diversity of citizenship, federal courts, under the doctrine of Erie Railroad Co. v. Tompkins, 304 U.S. at 78 . . . must follow the decisions of intermediate state courts in the absence of convincing evidence that the highest court of the state would decide differently." 311 U.S. at 467.  "In particular, this is true where the intermediate state court has determined the precise question in issue in an earlier suit between the same parties, and the highest court of the state has refused review." Stoner v. New York Life Insurance Co., 311 U.S. at 467.  See Adams-Arapahoe Joint School Dist. No. 28-J v. Cont'l Ins. Co., 891 F.2d 772, 774 (10th Cir. 1989)("With respect to issues which the Colorado Supreme Court has not addressed, we may consider all available resources, including Colorado appellate court decisions, other state and federal decisions, and the general trend of authority, to determine how the Colorado Supreme Court would construe the law in this case.").  As the Tenth Circuit explained in Wade v. EMCASCO Ins. Co., 483 F.3d 657 (10th Cir. 2007):

> In cases arising under diversity jurisdiction, the federal court's task is not to reach its own judgment regarding the substance of the common law, but simply to ascertain and apply the state law. . . . The federal court must follow the most recent

> decisions of the state's highest court. . . . Where no controlling state decision exists, the federal court must attempt to predict what the state's highest court would do . . . In doing so, it may seek guidance from decisions rendered by lower courts in the relevant state . . . appellate decisions in other states with similar legal principles . . . district court decisions interpreting the law of the state in question, . . . . and the general weight and trend of authority in the relevant area of law. . . . Ultimately, however, the Court's task is to predict what the state supreme court would do. Our review of the district court's interpretation of state law is de novo.

483 F.3d at 665-66 (internal citations and quotation marks omitted).

The Tenth Circuit generally "will not certify questions to a state supreme court when the requesting party seeks certification only after having received an adverse decision from the district court." Massengale v. Okla. Bd. of Exam'rs in Optometry, 30 F.3d 1325, 1331 (10th Cir. 1994). See Arnold v. Farmers Ins. Co., 827 F. Supp. 2d 1272, 1297 (D.N.M. 2010)(Browning, J.)827 F. Supp. 2d at 1297 (denying the Plaintiffs' request for certification because the Plaintiffs requested the certification after the Court rendered judgment in favor of the Defendants, and Plaintiffs' request for certification was made in the alternative); XTO Energy, Inc. v. ATD, LLC, 189 F. Supp. 3d 1174, 1207 (D.N.M. 2016)(Browning, J.)(declining a Defendant Insurer's request for certification in its Motion for Reconsideration after the Court had already ruled against the Insurer under New Mexico's Oilfield Anti-Indemnity Statute, N.M.S.A. § 56-7-2); Martinez v. Martinez, 2013 WL 3270448, at *47(D.N.M. June 3, 2012)(declining to certify a question when the Court could interpret New Mexico precedent); Armijo v. Ex Cam, Inc, 843 F.2d 406, 407 (10th Cir. 1988)(noting that "[c]ertification is not to be routinely invoked whenever a federal court is presented with an unsettled question of state law" and that "the plaintiff did not request certification until after the district court made a decision unfavorable to her"); Boyd Rosene & Assoc., Inc. v. Kan. Mun. Gas Agency, 178 F.3d 1363, 1364 (10th Cir. 1999)("Late requests for certification are rarely granted . . . and are generally disapproved, particularly when

the district court has already ruled."); Harvey E. Yates Co. v. Powell, 98 F.3d 1222, 1229 n.6 (10th Cir. 1996)(denying request for certification in removed case where the moving party had not moved for certification in the district court and had received an adverse ruling).

## ANALYSIS

DeVargas contends that neither his 1992 second-degree murder conviction nor his 2018 aggravated fleeing from law enforcement officer conviction can serve as a predicate offense under 18 U.S.C. § 922(g), because DeVargas' civil rights were restored following both convictions. See MTD at 1. The United States concedes that DeVargas' right to vote, right to serve on a jury, and right to possess a firearm were restored following his 1992 conviction. See Response at 3. The United States also concedes that DeVargas' right to vote and serve on a jury were restored following his 2018 conviction. See Response at 3. The Court first addresses DeVargas' argument that his right to hold public office was restored automatically following his 1992 conviction. In this analysis, the Court concludes that N.M.S.A. §§ 10-1-2 and 31-13-(E) are unconstitutional under the New Mexico Constitution. Consequently, the Court determines that DeVargas can hold public office and, therefore, that his 1992 conviction is not a predicate offense under 18 U.S.C. § 922(g). Next, the Court considers DeVargas' argument that, pursuant to United States v. Reese, his civil rights were restored automatically upon completion of his suspended sentence after his 2018 conviction. The Court concludes that the Supreme Court of New Mexico would not conclude that United States v. Reese extends to suspended sentences and, consequently, that DeVargas' civil rights were not restored following his 2018 conviction. Accordingly, DeVargas' 1992 second-degree murder conviction is not a predicate offense, but DeVargas' 2018 aggravated fleeing from a law enforcement officer is a predicate offense for the felon-in-possession charges.

- 29 -

I.       **DEVARGAS HAS THE RIGHT TO HOLD PUBLIC OFFICE IN NEW MEXICO**.

18 U.S.C. § 922(g) states: "It shall be unlawful for any person who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year" to possess a firearm.   18 U.S.C. § 922(g).   A "crime punishable by imprisonment for a term exceeding one year" does not include:

> Any conviction which has been expunged, or set aside or for which a person has been pardoned or has had civil rights restored shall not be considered a conviction for purposes of this chapter, unless such pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms.

18 U.S.C. § 921(a)(20).   A state felony conviction cannot serve as a predicate offense for § 922's purposes when a person's civil rights have been restored.   See 18 U.S.C. § 922.   In United States v. Maines, 20 F.3d 1102 (10th Cir. 1994), the Tenth Circuit concludes that a person's civil rights are restored once a person has the right to vote, right to serve on a jury, right to hold public office, and right to possess a firearm.   See United States v. Maines, 20 F.3d at 1104.   Here, the parties do not dispute that, after DeVargas' 1992 conviction, he regained the right to vote, the right to serve on a jury, and the right to possess a firearm.   See Response at 3-4.   Consequently, the Court must decide whether, under New Mexico law, DeVargas regained the right to hold public office after his 1992 conviction.

The New Mexico Constitution, Article VII, § 2, describes the qualifications for holding public office in New Mexico:

> Every citizen of the United States who is a legal resident of the state and is a qualified elector therein, shall be qualified to hold any elective public office except as otherwise provided in this constitution.  The legislature may provide by law for such qualifications and standards as may be necessary for holding an appointive position by any public officer or employee.

N.M. Const., Art. VII, § 2.   The New Mexico Constitution, Article VII, § 1, states:

> Every person who is a qualified elector pursuant to the constitution and laws of the United States and a citizen thereof shall be qualified to vote in all elections in New Mexico, subject to residency and registration requirements provided by law, except as restricted by statute either by reason of criminal conviction for a felony or by reason of mental incapacity, being limited only to those persons who are unable to mark their ballot and who are concurrently also unable to communicate their voting preference.

N.M. Const., Art. VII, § 1.[8]  New Mexico currently has two laws that restrict the rights of persons with felony convictions from holding office: N.M.S.A. §§ 10-1-2 and 31-13-1(E).  N.M.S.A. § 31-13-1(E) holds:

> A person who has been convicted of a felony shall not be permitted to hold an office of public trust for the state, a county, a municipality or a district, unless the person has presented the governor with a certificate verifying the completion of the sentence and was granted a pardon or a certificate by the governor restoring the person's full rights of citizenship.

N.M.S.A. § 31-13-1(E).  Further, N.M.S.A. § 10-1-2 states: "[N]o person convicted of a felonious or infamous crime, unless such person has been pardoned or restored to political rights, shall be qualified to be elected or appointed to any public office in this state."  N.M.S.A. § 10-1-2.  DeVargas contends that the New Mexico Constitution explicitly holds that any qualified elector can hold public office, and any person who is qualified to vote in New Mexico is a qualified elector

---

[8]Notably, New Mexico citizens voted to amend the New Mexico Constitution, Article VII, § 1, in 2010.  See Brief Analyses and Arguments for and Against the Constitutional Amendments Proposed by the Legislature In 2009 and 2010, New Mexico Legislative Council Service, available at: https://www.nmlegis.gov/Publications/Constitutional_Amendments (last visited January 5, 2022). The previous version of Article VII, § 1 read:

> Every citizen of the United States who is over the age of twenty-one years and has resided in New Mexico twelve months, in the county ninety days, and in the precinct in which he offers to vote thirty days, next preceding the election, except idiots, insane persons and persons convicted of a felonious or infamous crime unless restored to political rights, shall be qualified to vote at all elections for public officers.

N.M. Const., Art. VII, § 1 (2010).

by virtue of the New Mexico Constitution, Art. VII § 1.  See Tr. at 98:1-7 (Hart).  DeVargas argues

that the New Mexico Constitution does not provide authority for the New Mexico Legislature to

restrict a person's right to hold public office aside from its authority to restrict a person's right to

vote.  See Tr. at 98:7-12 (Hart).  Consequently, DeVargas argues that N.M.S.A. §§ 10-1-2 and

31-13-1 and are unconstitutional restrictions on a person's right to hold public office in New

Mexico.  See Tr. at 99:3-10 (Hart).

     In United States v. Reese, the Tenth Circuit certified a question to the Supreme Court of

New Mexico:

>      If an otherwise-qualified person has completed a deferred sentence for a
> felony offense, is that person barred from holding public office without a pardon or
> certificate from the governor, as required by N.M. Stat. Ann. § 31-13-1(E), or is
> that person's right to hold office automatically restored by Article VII, §§ 1, 2 of
> the New Mexico Constitution and N.M. Stat. Ann. § 31-13-1(A)(1)?

United States v. Reese, 2014-NMSC-013, ¶ 17, 326 P.3d at 454.  The Supreme Court of New

Mexico does not answer, however, the certified question in United States v. Reese; instead, the

Supreme Court of New Mexico concludes that a person's right to hold office in New Mexico is

automatically restored at the completion of a deferred sentence.  See 2014-NMSC-013, ¶ 50, 326

P.3d at 465.  The question whether N.M.S.A. §§ 10-1-2 and 31-13-1(E) directly conflict with the

New Mexico Constitution is, therefore, a question of first impression.

     The Court's task when applying State law is to "look first to the words of the State supreme

court."  Peña v. Greffet, 110 F. Supp. 3d 1103, 1132 (D.N.M. 2015)(Browning, J.).[9]  If the Court

---

[9]In Peña v. Greffet, the Court engaged this approach to predict what the Supreme Court of
New Mexico would say about imposing vicarious liability under the aided-in-agency theory in the
prison-guard inmate context, and predicted that the Supreme Court of New Mexico would say:

> If an inmate can establish that a prison official with corporal authority over the
> inmate committed a tort against the inmate, and that the official's position of

finds only an opinion from the State Court of Appeals, while "certainly [the Court] may and will consider the Court of Appeal[s'] decision in making its determination, the Court is not bound by the Court of Appeal[s'] decision in the same way that it would be bound by a Supreme Court decision." Mosley v. Titus, 762 F. Supp. 2d 1298, 1332 (D.N.M. 2010)(Browning, J.)(noting that, where the only opinion on point is "from the Court of Appeals, . . . the Court's task, as a federal district court sitting in this district, is to predict what the Supreme Court of New Mexico would do if the case were presented to it")(citing Wade v. EMCASCO Ins., 483 F.3d 657, 666 (10th Cir. 2007)(explaining that, "[w]here no controlling state decision exists, the federal court must attempt to predict what the state's highest court would do" and that, "[i]n doing so, it may seek guidance from decisions rendered by lower courts in the relevant state")).[10]  Ultimately, "the Court's task is

---

authority aided the official in the commission of that tort, then the official's employer is vicariously liable for all injuries that the tort inflicts.

Peña v. Greffet, 110 F. Supp. 3d at 1131.  Then, in Spurlock v. Townes, 2016-NMSC-014, 368 P.3d 1213, the Supreme Court of New Mexico agreed with the Court's prediction, quoting extensively from the Peña v. Greffet opinion.  See Spurlock v. Townes, 2016-NMSC-014, ¶¶ 11, 17-20, 368 P.3d at 1216-19.

[10]The Supreme Court has addressed what the federal courts may use when there is not a decision on point from the state's highest court:

The highest state court is the final authority on state law, but it is still the duty of the federal courts, where the state law supplies the rule of decision, to ascertain and apply that law even though it has not been expounded by the highest court of the State.  An intermediate state court in declaring and applying the state law is acting as an organ of the State and its determination, in the absence of more convincing evidence of what the state law is, should be followed by a federal court in deciding a state question.  We have declared that principle in West v. American Telephone and Telegraph Co., 311 U.S. 223 (1940), decided this day.  It is true that in that case an intermediate appellate court of the State had determined the immediate question as between the same parties in a prior suit, and the highest state court had refused to review the lower court's decision, but we set forth the broader principle as applicable to the decision of an intermediate court, in the absence of a decision by the highest court, whether the question is one of statute or common law.

to predict what the state supreme court would do." Wade v. EMCASCO Ins. Co., 483 F.3d at

666. Accord. Mosley v. Titus, 762 F. Supp. 2d at 1332 (quoting Wade v. EMCASCO Ins., 483

F.3d at 665-66); Rimbert v. Eli Lilly & Co., 577 F. Supp. 2d 1174, 1188-89 (D.N.M.

2008)(Browning, J.)(quoting Wade v. EMCASCO Ins., 483 F.3d at 665-66). See In re Santa Fe

Nat. Tobacco Co. Mktg. & Sales Practices & Prods. Liab. Litig., 288 F. Supp. 3d 1087, 1161-67

(D.N.M. 2017)(Browning, J.). Here, the Court must consider whether the Supreme Court of New

---------

    . . . .

        We have held that the decision of the Supreme Court upon the construction
of a state statute should be followed in the absence of an expression of a
countervailing view by the State's highest court, and we think that the decisions of
the Court of Chancery [the New Jersey trial court] are entitled to like respect as
announcing the law of the State.

    . . . .

        The question has practical aspects of great importance in the proper
administration of justice in the federal courts. It is inadmissible that there should
be one rule of state law for litigants in the state courts and another rule for litigants
who bring the same question before the federal courts owing to the circumstance of
diversity of citizenship. In the absence of any contrary showing, the rule [set forth
by two New Jersey trial courts, but no appellate courts,] appears to be the one which
would be applied in litigation in the state court, and whether believed to be sound
or unsound, it should have been followed by the Circuit Court of Appeals.

Fid. Union Tr. Co. v. Field, 311 U.S. 169, 177-80 (1940)(footnotes and citations omitted). The
Supreme Court has softened this position over the years; federal courts are no longer bound by
state trial or intermediate court opinions, but "should attribute [them] some weight . . . where the
highest court of the State has not spoken on the point." Comm'r v. Estate of Bosch, 387 U.S. at
465 (citing King v. Order of United Commercial Travelers, 333 U.S. 153, 159 (1948)). See 17A
James Wm. Moore et al., Moore's Federal Practice § 124.20 (3d ed.1999)("Decisions of
intermediate state appellate courts usually must be followed . . . [and] federal courts should give
some weight to state trial courts decisions.")(emphasis and title case omitted).

Mexico would hold N.M.S.A. §§ 31-13-1(E) and 10-1-2 unconstitutional in light of the 2010 constitutional amendment.

First, the Court concludes that United States v. Reese is instructive. See 2014-NMSC-013, 326 P.3d 454. In United States v. Reese, the United States charged the defendant, Reese, with being a felon in possession of a firearm under 18 U.S.C. § 922(g), and Reese contended that he was not a felon under New Mexico law, because his rights to vote, serve on a jury, hold public office, and possess a firearm were restored. See United States v. Reese, No. CR 09-2982 JEC, 2011 WL 13210688, at *1-2 (D.N.M. Aug. 17, 2011)(Conway, J.). The Honorable John Edward Conway, Senior United States District Judge for the United States District Court for the District of New Mexico, denied Reese's motion to dismiss and concluded that Reese's right to hold public office had not been restored under New Mexico law, because N.M.S.A. § 31-13-1(E) prohibits a person convicted of a felony from holding public office. See United States v. Reese, 2011 WL 13210688, at *4 (Conway, J.). Reese appealed Judge Conway's motion to dismiss the felon-in-possession charge on the grounds that § 31-13-1 is unconstitutional under the New Mexico Constitution. See United States v. Reese, 505 F. App'x 733, 735 (10th Cir. 2012), certified question answered, 2014-NMSC-013, 326 P.3d 454. At the outset, then-Judge Gorsuch of the Tenth Circuit noted:

> To decide this appeal we need to know whether a New Mexico statute offends and so gives way to the New Mexico Constitution. If it does, James Reese prevails. If it does not, he loses. At the heart of this federal appeal, then, lies not just a question of state law but a question about the meaning and effect of a state's governing charter. It is, too, a close question with persuasive arguments on both sides. In these circumstances, our respect for our cooperative federal system leads us to conclude that the New Mexico Supreme Court, not this court, should have the opportunity to decide it. So it is we respectfully certify the matter.

United States v. Reese, 505 F. App'x at 735.  Then-Judge Gorsuch notes that the United States

views § 31-13-1(E) as straightforwardly holding that Reese cannot hold public office, because he

has a felony conviction.  See United States v. Reese, 505 F. App'x at 736.  Then-Judge Gorsuch

also frames Reese's argument:

> On Mr. Reese's side of the ledger, one might argue that the New Mexico
> Constitution trumps section 31-13-1(E)'s statutory restriction.  The
> state constitution provides that "[e]very citizen ... who is a legal resident of the state and
> is a qualified elector therein, shall be qualified to hold any elective public office."
> N.M. Const. art. VII, § 2.  In turn, a qualified elector (a legal voter) is defined as
> any citizen over twenty-one who meets certain residency requirements, "except
> idiots, insane persons and persons convicted of a felonious or infamous crime
> unless restored to political rights."  N.M. Const. art. VII, § 1.  And it certainly
> appears Mr. Reese was "restored to his political rights" and so became a qualified
> elector by operation of law when he became eligible to vote after successfully
> completing his deferred sentence.  See N.M. Stat. Ann. § 31-13-1(A)(1) (lifting the
> voting ban from those who complete deferred sentences).  According to this chain
> of reasoning, Mr. Reese can vote because he completed his deferred sentence, the
> state constitution mandates every voter can also hold office, so it follows Mr. Reese
> can hold office.  Any statute purporting to direct otherwise, including section 31-
> 13-1(E), must give way.

See United States v. Reese, 505 F. App'x at 736.  Then-Judge Gorsuch notes that there is

controlling statutory and constitutional authority supporting both sides, the only Tenth Circuit

caselaw on the matter assumed § 31-13-1(E)'s validity without considering its constitutionality,

and the only related Supreme Court of New Mexico case did not have occasion to decide whether

§ 31-13-1(E) was constitutional, because the defendant had not completed his sentence.  See

United States v. Reese, 505 F. App'x at 736 (citing United States v. Molina, 484 F. App'x. at 280-

81 and State ex rel. King v. Sloan, 2011-NMSC-020, 149 N.M. 620, 253 P.3d 33, 34 (2011)).

Because the case presents a close question of New Mexico state law, the Tenth Circuit certified

the question of § 31-13-1(E)'s constitutionality to the Supreme Court of New Mexico.  See United

States v. Reese, 505 F. App'x at 734.

The Supreme Court of New Mexico began its analysis by considering the text of the New

Mexico Constitution.  See United States v. Reese, 2014-NMSC-013, ¶ 14, 326 P.3d at 457.  The

Supreme Court of New Mexico notes that the New Mexico Constitution, Art. VII, § 1 provides for

the right to vote, and the phrase "unless restored to political rights" provides an avenue for the

New Mexico Legislature to reverse a felon's voting disqualification.  2014-NMSC-013, ¶ 14, 326

P.3d at 457 (quoting N.M. Const., Art. VII, § 1).  The Supreme Court of New Mexico notes that

the New Mexico Legislature establishes such a mechanism via N.M.S.A. § 31-13-1(A), which

restores the right to vote to convicted felons who have completed their sentence's terms, but has

also enacted § 31-13-1(E), which requires that the Governor grant a pardon or certificate for a

person to be eligible to hold public office.  See 2014-NMSC-013, ¶¶ 15-16, 326 P.3d at 457.  The

Supreme Court of New Mexico acknowledges the Tenth Circuit's concern that "any interpretation

of the statute restoring Reese's right to vote but not his right to hold public office might run afoul

of Article VII, Section 2 of the New Mexico Constitution, which arguably allows all persons with

the right to vote also to hold public office."  See 2014-NMSC-013, ¶ 16, 326 P.3d at 457.  The

Supreme Court of New Mexico first analyzed, however, the "meaning of the deferred sentencing

scheme under New Mexico law" and whether § 31-13-1(E) applies at all to a deferred sentence.

See 2014-NMSC-013 ¶ 18, 326 P.3d at 457.  In conducting its analysis of deferred sentences, the

Supreme Court of New Mexico considered § 31-13-1's legislative history, and noted that the 2001

amendments of the New Mexico Statutes "separated the right to vote from the right to hold office

for the first time."  2014-NMSC-013, ¶ 38, 326 P.3d at 462 (citing N.M.S.A. § 31-13-1 (2001)).

> The amendments expressly provided, also for the first time, that the right to vote
> would be restored automatically once "the person . . . has completed the terms of a
> suspended or *deferred sentence* imposed by a court."  *See* NMSA 1978,
> § 31-13-1(A) (2001)(emphasis added)(allowing felons to have the right to vote
> restored if certain conditions were met).  As amended, however, the statute

separately addressed the right to hold public office, made no mention of a deferred sentence, and limited restoration as in the 1963 statute to completing a sentence and securing a pardon. *See* § 31-13-1(C) (2001)(requiring a governor's pardon for the right to hold office to be restored). In 2005, the statute was again amended, to provide procedures for restoring the right to vote. *See* § 31-13-1 (2005). The Legislature also renumbered subsection (C) as subsection (E), but the language regarding the restoration of the right to vote and the right to hold office remained largely as it had been. *Compare* § 31-13-1(C) (2001), *with* § 31-13-1(E).

2014-NMSC-013 ¶ 38, 326 P.3d at 462. In other words, the Supreme Court of New Mexico acknowledged that the right to vote and the right to hold public office were treated the same until the 2001 amendments of the New Mexico Statutes added the statutory requirement that a person receive a pardon before their right to hold public office is restored. See 2014-NMSC-013, ¶ 38, 326 P.3d at 462. The Supreme Court of New Mexico does not analyze, however, § 31-13-1(E)'s constitutionality, especially in light of the 2010 amendments to the New Mexico Constitution. See 2014-NMSC-013, ¶ 38, 326 P.3d at 462. Instead, the Supreme Court of New Mexico concludes that Reese's deferred sentence's completion restored automatically his civil rights, and that restoration includes his right to hold public office. See 2014-NMSC-013, ¶ 43, 326 P.3d at 463. Consequently, while United States v. Reese provides insight to the Court about § 31-13-1(E)'s constitutionality, it does not answer the question for the Court. See United States v. Reese, 2014-NMSC-013, ¶ 50, 326 P.3d at 465.

The Court also finds State ex rel. King v. Sloan, 2011-NMSC-020, 149 N.M. 620, 253 P.3d 33, instructive here. See 2011-NMSC-020, 149 N.M. 620, 253 P.3d 33. In State ex rel. King v. Sloan, the defendant, Carol Sloan, a New Mexico Public Regulation Commission Commissioner, was convicted for aggravated battery and aggravated burglary. See State ex rel. King v. Sloan, 2011-NMSC-020, ¶ 1, 149 N.M. at 621, 253 P.3d at 34. After Sloan's conviction, the Attorney

General filed a petition for a writ of quo warranto[11] requesting that the Supreme Court of New Mexico remove Sloan from public office because of her felony convictions.  See State ex rel. King v. Sloan, 2011-NMSC-020, ¶ 1, 149 N.M. at 621, 253 P.3d at 34.  The Supreme Court of New Mexico granted the writ and concluded that Sloan's removal from office was effective upon her judgment of conviction's entry.  State ex rel. King v. Sloan, 2011-NMSC-020 ¶ 1, 149 N.M. at 621, 253 P.3d at 34.  To determine whether the Supreme Court of New Mexico should remove Sloan from public office, the Supreme Court of New Mexico concluded that it must analyze "who is considered 'a qualified elector' under our state constitution, or, more specifically, who is not."  State ex rel. King v. Sloan, 2011-NMSC-020, ¶ 2, 149 N.M. at 621, 253 P.3d at 34.  In analyzing this, the Supreme Court of New Mexico concluded:

> If Ms. Sloan is not a qualified elector, she is not qualified to hold the office of PRC Commissioner. Article VII, Section 1 provides that anyone "convicted of a felonious or infamous crime" is not a qualified elector "unless restored to political rights." Our legislature has recognized this constitutional restriction on the right to hold public office. *See, e.g.*, NMSA 1978, § 10-1-2 (1953)(providing that a person convicted of a felony is not qualified to be elected to a public office); NMSA 1978, § 31-13-1(E) (2005)(providing that a person convicted of a felony "shall not be permitted to hold an office of public trust for the state"). In light of the foregoing constitutional and statutory provisions, because Ms. Sloan was convicted of two felony offenses, we issued a writ of quo warranto to remove her from office.

State ex rel. King v. Sloan, 2011-NMSC-020 ¶ 3, 149 N.M. at 621, 253 P.3d at 34.  The Supreme Court of New Mexico further explains that the New Mexico Constitution provides "that 'to hold any elective public office' one must be 'a qualified elector.'"  State ex rel. King v. Sloan, 2011-NMSC-020, ¶ 7, 149 N.M. at 622, 253 P.3d at 35 (quoting N.M. Const. Art. VII, § 2).  The Supreme Court of New Mexico proceeds to state: "One cannot be a qualified elector if convicted

---

[11]A writ of quo warranto is "[a] common-law writ used to inquire into the authority by which a public office is held or a franchise is claimed."  Quo Warranto, Black's Law Dictionary (11th ed. 2019).  See 149 N.M. at 621, 2011-NMSC-020 ¶ 3, 253 P.3d at 34.

of committing a felony offense." State ex rel. King v. Sloan, 2011-NMSC-020, ¶ 7, 149 N.M. at 622, 253 P.3d at 35 (citing N.M. Const. Art. VII, § 1).  Because Sloan had not completed her sentence for the felony conviction, and because § 31-13-1(A) explicitly prohibits those currently serving sentences from felony convictions from voting, the Supreme Court of New Mexico did not consider whether, once a person's voting rights are restored, a person can again hold public office. See State ex rel. King v. Sloan, 2011-NMSC-020, ¶ 7, 149 N.M. at 622, 253 P.3d at 35.  Moreover, the Supreme Court of New Mexico did not consider whether the New Mexico Legislature's mandate that a person must have their voting rights restored and receive a Governor's pardon from pursuant to § 31-13-1 is outside of constitutional bounds.  See State ex rel. King v. Sloan, 2011-NMSC-020, ¶ 7, 149 N.M. at 622, 253 P.3d at 35.

In Kane v. City of Albuquerque, 2015-NMSC-027, 358 P.3d 249, the Supreme Court of New Mexico considers whether municipal charters impermissibly added qualification requirements for a person holding public office.  See Kane v. City of Albuquerque, 2015-NMSC-027, ¶ 42, 358 P.3d at 262.  In holding that a municipal charter may not add qualification requirements beyond the New Mexico Constitution for holding public office, the Supreme Court of New Mexico relies on a Court of Appeals of New Mexico case, Cottell v. Santillanes, 1995-NMCA-090, 120 N.M. 367, 901 P.2d 785.  In Cottell v. Santillanes, the Court of Appeals of New Mexico considered the New Mexico Constitution, Art. VII, § 2, which states: "Every citizen of the United States who is a legal resident of the state and is a qualified elector therein, shall be qualified to hold any elective public office *except as otherwise provided in this constitution.*"  1995-NMCA-090, ¶ 7, 120 N.M. 367, 369, 901 P.2d 785, 787 (quoting N.M. Const. Art. VII, § 2)(emphasis in Cottell v. Santillanes but not in the State Constitution).  The Court of Appeals of New Mexico acknowledges that the New Mexico Constitution, Art. V, § 13 provides that "district and municipal

officers, county commissioners, school board members and municipal governing body members shall be residents of the political subdivision or district from which they are elected or for which they are appointed."  N.M. Const., Art. V, § 13.  The Court of Appeals of New Mexico then concludes that "the law is that any citizen who is a qualified voter can hold any municipal elected office subject only to the residency requirement."  Cottrell v. Santillanes, 1995-NMCA-090, ¶ 7, 120 N.M. at 369, 901 P.2d at 787.  The Supreme Court of New Mexico explicitly adopted this conclusion in Kane v. City of Albuquerque, 2015-NMSC-027, ¶ 42, 358 P.3d at 262 (concluding that "'any citizen who is a qualified voter can hold any municipal elected office subject only to the residency requirement.'" (quoting Cottrell v. Santillanes, 1995-NMCA-090, ¶ 7, 120 N.M. at 369, 901 P.2d at 787)).  Moreover, the Supreme Court of New Mexico approved the Court of Appeals of New Mexico's conclusion in Cottrell v. Santillanes that "'the sole means of adopting additional qualifications [for elective public office] is by constitutional amendment.'"  Kane v. City of Albuquerque, 2015-NMSC-027, ¶ 42, 358 P.3d at 262 (quoting Cottrell v. Santillanes, 1995-NMCA-090, ¶ 8, 120 N.M. at 369, 901 P.2d at 787)(alteration in Kane v. City of Albuquerque but not in Cottrell v. Santillanes).

Having found no Supreme Court of New Mexico case on point addressing §§ 10-1-2 and 31-13-1's constitutionality, the Court carefully considers what it believes the Supreme Court of New Mexico would do in this situation.  First, the Court determines that the Supreme Court of New Mexico would conclude that, to hold any elective public office, one must be a qualified elector.  See State ex rel. King v. Sloan, 2011-NMSC-020, ¶ 7, 149 N.M. at 622, 253 P.3d at 35.  Next, the Court concludes that the Supreme Court of New Mexico would conclude that, pursuant to the New Mexico Constitution, a person is a qualified elector when they are a qualified voter.  See Kane v. City of Albuquerque, 2015-NMSC-027, ¶ 42, 358 P.3d 249, 262 (concluding that,

under the New Mexico Constitution, "'any citizen who is a qualified voter can hold any municipal elected office subject only to the residency requirement.'")(quoting Cottrell v. Santillanes, 1995-NMCA-090, ¶ 7, 120 N.M. at 369, 901 P.2d at 787).  See also N.M. Att'y Gen. Op. 73-44 (1973)(stating that the right to vote and the right to hold public office are inextricably linked under the New Mexico Constitution).  The Supreme Court of New Mexico notes in United States v. Reese that the original version of § 31-13-1 "link[ed] restoration of the right to vote and the right to hold public office," and remained "essentially unchanged" until New Mexico State laws were recodified in 2001.[12]  2014-NMSC-013, ¶ 26, 326 P.3d at 460.  The Court determines, therefore, that the Supreme Court of New Mexico would continue to conclude that a qualified voter can hold public office in New Mexico.

Further, the Court determines that the Supreme Court of New Mexico would conclude that the New Mexico Legislature cannot require additional qualifications for a person to hold public office beyond what the New Mexico Constitution states.  The Supreme Court of New Mexico concludes in Kane v. City of Albuquerque that a person who is a qualified voter can hold municipal elected office subject only to the New Mexico Constitution's explicit requirement that the person

---

[12]The predecessor to N.M.S.A. § 31-13-1 reads:

Any person who has been convicted of a felony shall not be permitted to *vote* in any election held pursuant to the laws of the state or any subdivision thereof, nor shall such person be permitted to hold any *office* of public trust for the state or any subdivision thereof. . . .  The disability imposed by this section may only be removed by the governor.  *Upon presentation to the governor of a certificate evidencing the completion of an individual's sentence*, the governor may, in his discretion, grant to such individual a pardon or a certificate restoring such person to full rights of citizenship.

United States v. Reese, 2014-NMSC-013, ¶ 26, 326 P.3d at 460 (quoting N.M.S.A. 1953, § 40A-29-14(A), (C)(1963))(emphasis added in United States v. Reese only).

be a municipality resident.  See Kane v. City of Albuquerque, 2015-NMSC-027, ¶ 42, 358 P.3d

249, 262.  The New Mexico Constitution's only requirement for a person holding public office --

other than a public municipal position -- is that they are a qualified elector, so it necessarily follows

that the New Mexico Constitution requires only that a person be a qualified voter to hold public

office.  The Supreme Court of New Mexico was also clear in Kane v. City of Albuquerque that

"'the sole means of adopting additional qualifications [for elective public office] is by

constitutional amendment.'"  Kane v. City of Albuquerque, 2015-NMSC-027, ¶ 42, 358 P.3d 249,

262 (quoting Cottrell v. Santillanes, 1995-NMCA-090, ¶ 8, 120 N.M. at 369, 901 P.2d at

787)(alteration in Kane v. City of Albuquerque but not in Cottrell v. Santillanes).  That is, the New

Mexico Legislature cannot impose an additional requirement on the qualifications for holding

public office beyond what the New Mexico Constitution provides.  Under their plain reading, both

§§ 10-1-2 and 31-13-1 require both that a person be a qualified voter, and that a person have a

pardon or certificate from the Governor in order to hold public office.  Consequently, the Court

reads §§ 10-1-2 and 31-13-1(E) as adding an impermissible additional requirement to the New

Mexico Constitution's directive that a qualified elector can hold public office, and therefore,

determines that the Supreme Court of New Mexico would conclude that §§ 10-1-2 and 31-13-1(E)

are unconstitutional under the New Mexico Constitution.

DeVargas contends, and the United States concedes, that DeVargas' right to vote was

restored in June, 2000, when he completed his sentence for the 1992 conviction.  See MTD at 5.

Pursuant to the New Mexico Constitution, DeVargas' right to hold public office was restored when

DeVargas' right to vote was restored.  Because DeVargas' right to vote, right to serve on a jury,

right hold public office, and right to possess a firearm were all restored following his 1992

conviction, and a state conviction cannot serve as a predicate offense once their civil rights are

restored under State law, DeVargas' 1992 conviction cannot serve as a predicate offense under 18 U.S.C. § 922(g).

## II.   DEVARGAS' CIVIL RIGHTS WERE NOT RESTORED FOLLOWING HIS 2018 CONVICTION.

DeVargas contends that his 2018 conviction cannot serve as a predicate offense for 18 U.S.C. § 922(g), because his civil rights were restored following his suspended sentence's completion.  See MTD at 10.  DeVargas relies primarily on United States v. Reese to contend that his civil rights were automatically restored following his suspended sentence's completion.  See MTD at 10.  The United States, on the other hand, contends that there is a fundamental difference between a deferred sentence and suspended sentence such that United States v. Reese cannot stand for the proposition that a person's civil rights are restored upon his or her suspended sentence's completion.  See Response at 7.  Once again, because there is no Supreme Court of New Mexico case directly on point here, the Court must determine whether the Supreme Court of New Mexico would extend United States v. Reese's holding and conclude that DeVargas' rights were restored after his suspended sentence's completion.

At the outset, the Court looks to New Mexico's statutory scheme outlining the sentences a court may impose at sentencing.  See N.M.S.A. § 31-20-3.  N.M.S.A. § 31-20-3 provides, in relevant part:

> Upon entry of a judgment of conviction of any crime not constituting a capital or first degree felony, any court having jurisdiction when it is satisfied that the ends of justice and the best interest of the public as well as the defendant will be served thereby, may either:
>
> A.    enter an order deferring the imposition of sentence;
>
> B.    sentence the defendant and enter an order suspending in whole or in part the execution of the sentence . . . .

N.M.S.A. § 31-20-3.   The Court notes that New Mexico recognizes deferred sentences and suspended sentences as two separate sentencing options.  See N.M.S.A. § 31-20-3(A)-(B).

In United States v. Reese, the Supreme Court of New Mexico asks whether N.M.S.A. § 31-13-1(E) -- which addresses the right of a person to hold public office after completing a criminal sentence -- applies to a person who has a deferred sentence.  See United States v. Reese, 2014-NMSC-013 ¶ 18, 326 P.3d at 458.  In considering this issue, the Supreme Court of New Mexico considers the history of deferred sentences in New Mexico.  2014-NMSC-013, ¶ 21, 326 P.3d at 459.  The Supreme Court of New Mexico determines that, in 1963, the New Mexico Legislature provided a deferred sentencing option to New Mexico courts.  2014-NMSC-013, ¶ 24, 326 P.3d at 459.  A deferred sentence occurs "after a plea or conviction but *before* any sentence was imposed," and, "if successfully completed, would result in no actual sentence being imposed and ultimately in a dismissal of the charges."  2014-NMSC-013, ¶ 24, 326 P.3d at 459 (emphasis in United States v. Reese)(citing N.M.S.A. 1953, § 40A-29-15(A))("Whenever the period of deferment expires, the defendant is relieved of any obligations imposed on him by the order of the court and has *satisfied his criminal liability* for the crime, the court *shall* enter a *dismissal* of the criminal charges.")(emphasis added in United States v. Reese only).  Moreover, the Supreme Court of New Mexico states: "If a sentence is never imposed and the charges are then dismissed, then logically it would appear that civil rights, suspended during the period of deferment, would be restored automatically by operation of law without the intervention of the governor."  2014-NMSC-013, ¶ 25, 326 P.3d at 459.

The question, as the Supreme Court of New Mexico puts it, is whether N.M.S.A. 1953, § 40A-20-14(A), (C) (1963), was intended to include those who received a deferred sentence.  See 2014-NMSC-013, ¶ 26, 326 P.3d at 460.  N.M.S.A. 1953, § 40A-20-14(A), (C) (1963) reads:

> Any person who has been convicted of a felony shall not be permitted to vote in any election held pursuant to the laws of the state or any subdivision thereof, nor shall such person be permitted to hold any office of public trust for the state or any subdivision thereof . . . . The disability imposed by this section may only be removed by the governor.  Upon presentation to the governor of a certificate evidencing the completion of an individual's sentence, the governor may, in his discretion, grant to such individual a pardon or a certificate restoring such person to full rights of citizenship,

N.M.S.A. 1953, § 40A-20-14(A), (C) (1963).  See 2014-NMSC-013, ¶ 26, 326 P.3d at 460.  That is, the Supreme Court of New Mexico considers whether an individual "whose sentence is deferred and never imposed, and whose charges are ultimately dismissed" could receive a certificate verifying the completion of his sentence and be eligible for a Governor's pardon.  2014-NMSC-013, ¶ 27, 326 P.3d at 460.  The Supreme Court of New Mexico notes, however, that, since deferred sentences were introduced into New Mexico courts, there have been two pathways to restoring civil rights: "the predecessor of Section 31-13-1 for those who received and completed criminal *sentences*, and the predecessor of Section 31-20-9 for those who received deferred sentences and had no sentences to complete."  2014-NMSC-013, ¶ 28, 326 P.3d at 460 (emphasis in original).  Deferred sentences, the Supreme Court of New Mexico explains, are acts of judicial clemency that allow a court to "reinstate the defendant to civic life with the same rights and privileges as if the conviction had never occurred."  2014-NMSC-013, ¶ 29, 326 P.3d at 460.

The Supreme Court of New Mexico addresses Reese's argument that deferred sentences are different than other sentences and cites approvingly State v. Kenneman, 1982-NMCA-145, 98 N.M. 794, 653 P.2d 170, to note that the difference between a deferred sentence and a suspended sentence is that, in the latter, a sentence is actually imposed, while in the former, it is not.  See United States v. Reese, 2014-NMSC-013 ¶ 30, 326 P.3d at 461 (citing State v. Kenneman, 1982-

NMCA-145, ¶¶ 7-8, 98 N.M. at 796, 653 P.2d at 173).  The Supreme Court of New Mexico also acknowledges three advisory letters and opinions from New Mexico's Attorney General, each concluding that deferred sentences are different from suspended sentences, and that deferred sentences result in a person's civil rights being restored automatically, while other sentences required a pardon from the Governor for restoration.  See United States v. Reese, 2014-NMSC-013, ¶¶ 33-35, 326 P.3d at 461-62 (citing N.M. Att'y Gen. Op. 73-44 (1973), N.M. Att'y Gen. Advisory Letter to David A. Lane, Sixth Judicial District Attorney, at 1 (Nov. 12, 1985); and N.M. Att'y Gen. Op. 88-03 (1988)).  Consequently, the Supreme Court of New Mexico concludes that, since the New Mexico Legislature enacted the deferred sentencing scheme in 1963, it has been understood in New Mexico that civil rights are restored automatically upon a defendant meeting a deferred sentence's conditions and a court dismissing the charges.  See 2014-NMSC-013, ¶ 36, 326 P.3d at 462.

The Supreme Court of New Mexico next considers whether the 2001 and 2005 amendments to the law that is now codified at N.M.S.A. § 31-13-1 change the consequences of a deferred sentence with respect to a person's civil rights.  See United States v. Reese, 2014-NMSC-013, ¶ 39, 326 P.3d at 462.  After concluding that the amendments did not change the landscape with regard to deferred sentences, the Supreme Court of New Mexico determines that the New Mexico Executive Clemency Guidelines[13] in 2003 support this conclusion, because the Clemency Guidelines provide that the Governor "'will not consider a case where there was a successful completion of a deferred sentence, since a dismissal order under Section 31–20–9, NMSA is

_____

[13]The New Mexico Executive Clemency Guidelines are guidelines established by the Governor to inform applicants and the public about the Governor's pardoning authority and the factors the Governor considers when making pardoning decisions.

intended to restore citizenship rights and the right to bear arms.'" United States v. Reese, 2014-NMSC-013, ¶ 41, 326 P.3d at 463 (quoting State of New Mexico Executive Clemency Guidelines (Rev. Aug. 20, 2003), http://www.recordgone.com/public/templates/default/pdf/New–Mexico–Pardon–Application.pdf). Accordingly, rather than conclude that Reese's right to hold public office was restored pursuant to N.MS.A. § 31-13-1(E), the Supreme Court of New Mexico concludes that Reese's civil rights, including his right to vote, right to serve on a jury, right to hold public office, and right to possess a firearm, were restored automatically at his deferred sentence's completion. See 2014-NMSC-013, ¶ 43, 326 P.3d at 463.

In Padilla v. State, 1977-NMSC-063, 90 N.M. 664, 568 P.2d 190, the Supreme Court of New Mexico acknowledges that there is a difference between deferred and suspended sentences. 1977-NMSC-063, ¶ 8, 90 N.M. at 666, 568 P.2d at 192. The Supreme Court of New Mexico recognizes that, while a person with a suspended sentence may request a pardon or a certificate from the Governor to restore them to full citizenship rights, a person who has a deferred sentence, "has satisfied his criminal liability for the crime and the court must enter a dismissal of the charge." Padilla v. State, 1977-NMSC-063, ¶ 8, 568 P.2d at 192, 90 N.M. at 666. Moreover, in United States v. Reese, the Supreme Court of New Mexico cites favorably State v. Kenneman, in which the Court of Appeals of New Mexico analyzes at length the difference between a deferred sentence and a suspended sentence. See United States v. Reese, 2014-NMSC-013, ¶ 30, 326 P.3d at 461 (citing State v. Kenneman, 1982-NMCA-145, ¶¶ 7-8, 98 N.M. at 796, 653 P.2d at 173). The Court of Appeals of New Mexico explains:

> In the case of a suspended sentence, if the defendant satisfactorily completes the term of suspension, he has satisfied his liability for the crime and may be eligible for pardon. Section 31-20-8, N.M.S.A.1978 (1981 Repl.). In the case of deferral of sentence, if the defendant satisfactorily completes the period of deferment, he has satisfied his liability for the crime and the charges shall be dismissed. Section

31-20-9, N.M.S.A.1978 (1981 Repl.).  In the case of suspension, if probation is revoked, the court may require the defendant to serve the balance of the sentence previously imposed but suspended, or any lesser sentence.  Section 31-21-15(B), N.M.S.A.1978 (1981 Repl.); *State v. Reinhart*, 79 N.M. 36, 439 P.2d 554 (1968). In the case of deferral, if probation is revoked, the court may impose any sentence which might originally have been imposed.  *Id.  State v. Hernandez*, 97 N.M. 28, 636 P.2d 299 (Ct.App.1981).

Thus the difference between suspension and deferral is that suspension involves a sentence imposed while deferral does not.  Suspension always subjects the defendant to criminal consequences, although he may be pardoned, while deferral ordinarily results in the charges being dismissed.  With suspension, the sentence having been imposed, the court cannot later alter the sentence upwards. With deferral, no sentence having been imposed, the court may give any sentence it could originally have given.  *Hernandez*, supra.

State v. Kenneman, 1982-NMCA-145, ¶¶ 7-8, 98 N.M. at 796, 653 P.2d at 173.

DeVargas contends that his rights were restored automatically after his suspended sentence's completion.  See MTD at 13.  First, DeVargas contends that, like a deferred sentence, a suspended sentence is a form of judicial clemency which functions as the judicial equivalent of a pardon.  See MTD at 13.  DeVargas is correct that the Supreme Court of New Mexico has considered both deferred sentences and suspended sentences acts of judicial clemency, see State v. Serrano, 1966-NMSC-166, ¶ 3, 76 N.M. 655, 657, 417 P.2d 795, 796 ("It is clear that suspension or deferment of sentence is not a matter of right but is an act of clemency."); however, this label alone does not equate deferred and suspended sentences for the Court's purposes.

DeVargas also notes that the New Mexico Governor's clemency guidelines equate a suspended sentence and a deferred sentence.  See MTD at 14.  The Clemency Guidelines state:

The Governor will not normally consider a case in which an individual has successfully completed a suspended or deferred sentence.  That is because that individual has already been restored to full citizenship rights in New Mexico by operation of law.[14]  However, if for some reason a completed suspended or deferred

---

[14]See NMSA 1978, § 31-13-1(A)(1) (2005); NMSA 1978, § 31-20-9 (1963); United States v. Reese, 2014-NMSC-013, 326 P.3d 454; N.M. Att'y Gen. Op. 88-03 (1988).

> sentence causes a serious impairment to an individual's liberty or constitutional rights that can be remedied through a pardon, the Governor will consider granting a pardon.  An applicant seeking this type of pardon should explain what important interest or right has been impaired and should specifically describe how the Governor has authority to remove this impairment with a pardon.

State of New Mexico Executive Clemency Guidelines, at Section II.A, available at https://www.governor.state.nm.us/wp-content/uploads/2019/05/Executive-Clemency-Guidelines_Final.pdf (last accessed January 7, 2022)(footnote in original).  The Court agrees with DeVargas that the New Mexico Clemency Guidelines conclude that a person's rights are automatically restored upon both a deferred and suspended sentence's completion.  The Court's task is, however, to determine what the Supreme Court of New Mexico would conclude with respect to deferred and suspended sentences.  While the Supreme Court of New Mexico may consider the New Mexico Clemency Guidelines in its analysis, the Clemency Guidelines are not binding precedent, and the New Mexico Governor's interpretation of New Mexico law binds neither the Supreme Court of New Mexico nor the Court.  See United States v. Reese, 2014-NMSC-013, ¶¶ 33-35, 326 P.3d at 461-62.

The United States argues, on the other hand, that deferred and suspended sentences are fundamentally different, and that a person's rights are not restored automatically after a suspended sentence's completion.  See Response at 7.  In the United States' view, in holding that a person's civil rights are restored automatically after a deferred sentence's completion, the Supreme Court of New Mexico in United States v. Reese relies on the fact that charges are dismissed at the

---

State of New Mexico Executive Clemency Guidelines, at Section II.A, available at https://www.governor.state.nm.us/wp-content/uploads/2019/05/Executive-Clemency-Guidelines_Final.pdf (last accessed January 7, 2022)(footnote in original).

deferred sentence's conclusion.  See Response at 7 (citing United States v. Reese, 2014-NMSC-013, ¶ 25, 326 P.3d at 458).  For his part, DeVargas contends that both deferred and suspended sentences result in convictions under New Mexico law, and that United States v. Reese analyzed, not whether the defendant had a conviction, but whether the conviction can serve as a predicate offense under 18 U.S.C. § 922(g).  See MTD at 15 (citing Padilla v. State, 1977-NMSC-063, ¶ 9, 990 N.M. at 666, 568 P.2d at 192).  The Court concludes that the Supreme Court of New Mexico in United States v. Reese considers a deferred sentence's practical effects.  See 2014-NMSC-013, ¶ 28, 326 P.3d at 460.  The Supreme Court of New Mexico notes that deferred sentences do not result in a "completed sentence" as do other criminal punishments under New Mexico law.  See 2014-NMSC-013, ¶ 28, 326 P.3d at 460.  Moreover, when a defendant receives a deferred sentence, they never receive a sentence imposed, and at the completion of the deferred sentence, a court dismisses the charges.  See 2014-NMSC-013, ¶ 24, 326 P.3d at 459.  Consequently, it follows that, if a sentence is never imposed, and the charges are dismissed, a person is restored to their civil rights as if the deferred sentence never happened.  See 2014-NMSC-013, ¶ 24, 326 P.3d at 459.  Moreover, citing State v. Kenneman, the Supreme Court of New Mexico emphasizes that the relevant distinction between deferred sentences and other sentences -- specifically, suspended sentences -- is a sentence's imposition.  See United States v. Reese, 2014-NMSC-013 ¶ 30, 326 P.3d at 461 (citing State v. Kenneman, 1982-NMCA-145, ¶¶ 7-8, 98 N.M. at 796, 653 P.2d at 173).  The reason that a person who completes a deferred sentence cannot request a pardon from the Governor is because the person never had a sentence imposed, and at the conclusion of their deferred sentence, there no longer remains either a sentence or a conviction on the charge.  See Padilla v. State, 1977-NMSC-063, ¶ 8, 90 N.M. at 666, 568 P.2d at 192.  Consequently, there is no conviction for the Governor to pardon for a defendant who completes a deferred sentence.  A

person who completes a suspended sentence, on the other hand, has completed a sentence imposed and continues to have a conviction on the charge, which the Governor may pardon.  See Padilla v. State, 1977-NMSC-063, ¶ 8, 90 N.M. at 666, 568 P.2d at 192.

The Court concludes that the Supreme Court of New Mexico would not apply United States v. Reese to suspended sentences.  Since the deferred sentencing scheme's introduction into New Mexico law, courts have treated deferred sentences differently from other sentences.  Deferred sentences are an act of judicial clemency because of the advantages that they provide to defendants who receive them; that is, the lack of incarceration, the dismissal of charges, and the automatic restoration of civil rights.  The Supreme Court of New Mexico also has referred to suspended sentences as judicial acts of clemency.  See State v. Serrano, 1966-NMSC-166, ¶ 3, 76 N.M. 655, 657, 417 P.2d 795, 796.  Indeed, suspended sentences provide an important benefit to those who receive them: the defendant avoids incarceration so long as he or she follows the court's conditions. Although both sentences are acts of judicial clemency, it does not follow that both sentences result in the same post-conviction rights.  The Court concludes that the Supreme Court of New Mexico has, in the past, treated deferred sentences uniquely compared to other sentences -- including suspended sentences.  See United States v. Reese, 2014-NMSC-013 ¶ 30, 326 P.3d at 461 (citing State v. Kenneman, 1982-NMCA-145, ¶¶ 7-8, 98 N.M. at 796, 653 P.2d at 173).  Consequently, the Court concludes that the Supreme Court of New Mexico will continue to distinguish between deferred and suspended sentences here, because with a suspended sentence, there is a sentence imposed, a criminal conviction remains after the defendant serves his or her sentence and, thus, the Governor may pardon a person with a suspended sentence.  Accordingly, the Court concludes that, when DeVargas completed his suspended sentence on his 2018 conviction for aggravated fleeing from a law enforcement officer, his civil rights were not restored automatically.  DeVargas'

2018 conviction, therefore, may serve as a predicate offense for the 18 U.S.C. § 922(g) charge for being a felon in possession. The Court denies the MTD with respect to DeVargas' 2018 conviction.

IT IS ORDERED that (i) the United States' Motion in Limine to Exclude Defendant's Self-Serving Statements as Inadmissible Hearsay, filed October 20, 2021 (Doc. 45), is granted in part and denied in part; (ii) the United States' Motion in Limine to Exclude Evidence of Possible Penalties, filed October 20, 2021 (Doc. 46), is granted; (iii) the United States' Motion in Limine to Prohibit Unfounded Allegations of Government Misconduct or Irrelevant Challenges to the Quality of the Government's Investigation, filed October 22, 2021 (Doc. 48), is granted in part and denied in part; (iv) the United States' Motion in Limine to Prohibit Discussion of Defense Exhibits Not Previously Provided to the United States, filed October 22, 2021 (Doc. 49), is granted; (v) the United States' Motion in Limine to Prohibit Evidence of Defendant's Personal Beliefs About the Second Amendment, filed November 5, 2021 (Doc. 62), is granted in part and denied in part; (vi) the United States' Motion in Limine Regarding Admission of Defendant's Prior Conviction Documents, filed November 5, 2021 (Doc. 63), is granted in part and denied in part; (vii) the Defendant's Motion to Dismiss, filed November 9, 2021 (Doc. 71), is granted with respect to the 1992 conviction serving as a predicate offense and denied with respect to the 2018 conviction serving as a predicate offense; (viii) the Defendant's First Motion to Suppress Evidence, filed November 9, 2021 (Doc. 72), is denied; (ix) the Defendant's Second Motion to Suppress Evidence, filed November 10, 2021 (Doc. 74), is denied; and (x) the Defendant's Third Motion to Suppress, filed November 9, 2021 (Doc. 73), is denied.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Fred J. Federici
  Acting United States Attorney
Holland Kastrin
Timothy Trembley
  Assistant United States Attorneys
United States Attorney's Office
Albuquerque, New Mexico

   *Attorneys for the Plaintiff*

Carter B. Harrison, IV
Nicholas Thomas Hart
Harrison & Hart, LLC
Albuquerque, New Mexico

   *Attorneys for the Defendant*